# EXHIBIT 1

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Todd M. Friedman, P.C.,SBN 216752, Law Offices of Todd M. Friedman, P.C. 21031 Ventura Blvd., Suite 340, Woodland Hills, CA 91364 <br><br> TELEPHONE NO.: 323-306-4234  FAX NO.: 866-633-0228 <br> EMAIL ADDRESS: tfriedman@toddflaw.com <br> ATTORNEY FOR *(Name):* Plaintiffs, The Labelle Foundation, et al | **Electronically FILED by Superior Court of California, County of Los Angeles 1/05/2024 2:27 PM David W. Slayton, Executive Officer/Clerk of Court, By J. Nunez, Deputy Clerk** |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  LOS ANGELES
STREET ADDRESS: 111 N. Hill St.
MAILING ADDRESS: same
CITY AND ZIP CODE: Los Angeles, 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME:
The Labelle Foundation, et al v. Idexx Laboratories, Inc., et al

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER: |
|---|---|---|
| [x] Unlimited (Amount demanded exceeds $35,000)   [ ] Limited (Amount demanded is $35,000 or less) | [ ] Counter   [ ] Joinder <br> Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | 24STCV00360 <br> JUDGE: <br> DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[x] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [x] is  [ ] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [x] Substantial amount of documentary evidence
   d. [x] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [x] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [x] monetary  b. [x] nonmonetary; declaratory or injunctive relief  c. [x] punitive
4. Number of causes of action *(specify):* 6
5. This case [x] is  [ ] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: January 5, 2024
Todd M. Friedman
_____
(TYPE OR PRINT NAME)       ▶  (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2024]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
*www.courts.ca.gov*

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**                                        **CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

| SHORT TITLE | CASE NUMBER |
|---|---|
| The Labelle Foundation, et al v. Idexx Laboratories, Inc., et al | 24STCV00360 |

# CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION

## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Courthouse Location (Column C) | |
|---|---|
| 1.   Class Actions must be filed in the Stanley Mosk Courthouse, Central District. | 7.   Location where petitioner resides. |
| 2.   Permissive filing in Central District. | 8.   Location wherein defendant/respondent functions wholly. |
| 3.   Location where cause of action arose. | 9.   Location where one or more of the parties reside. |
| 4.   Location where bodily injury, death or damage occurred. | 10.   Location of Labor Commissioner Office. |
| 5.   Location where performance required, or defendant resides. | 11.   Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection). |
| 6.   Location of property or permanently garaged vehicle. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ 2201 Motor Vehicle – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | Uninsured Motorist (46) | ☐ 4601 Uninsured Motorist – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| **Other Personal Injury/ Property Damage/ Wrongful Death** | Other Personal Injury/ Property Damage/ Wrongful Death (23) | ☐ 2301 Premise Liability (e.g., dangerous conditions of property, slip/trip and fall, dog attack, etc.) | 1, 4 |
| | | ☐ 2302 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, battery, vandalism, etc.) | 1, 4 |
| | | ☐ 2303 Intentional Infliction of Emotional Distress | 1, 4 |
| | | ☐ 2304 Other Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | | ☐ 2305 Elder/Dependent Adult Abuse/Claims Against Skilled Nursing Facility | 1, 4 |
| | | ☐ 2306 Intentional Conduct – Sexual Abuse Case (in any form) | 1, 4 |

| SHORT TITLE | CASE NUMBER |
|---|---|
| The Labelle Foundation, et al v. Idexx Laboratories, Inc., et al | |

| | **A**<br>Civil Case Cover Sheet Case Type | **B**<br>Type of Action<br>(check only one) | **C**<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Other Personal Injury/ Property Damage/ Wrongful Death** | | ☐ 2307 Construction Accidents | 1, 4 |
| | | ☐ 2308 Landlord – Tenant Habitability (e.g., bed bugs, mold, etc.) | 1, 4 |
| | Product Liability (24) | ☐ 2401 Product Liability (not asbestos or toxic/ environmental) | 1, 4 |
| | | ☐ 2402 Product Liability – Song-Beverly Consumer Warranty Act (CA Civil Code §§1790-1795.8) (Lemon Law) | 1, 3, 5 |
| | Medical Malpractice (45) | ☐ 4501 Medical Malpractice – Physicians & Surgeons | 1, 4 |
| | | ☐ 4502 Other Professional Health Care Malpractice | 1, 4 |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ 0701 Other Commercial/Business Tort (not fraud or breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ 0801 Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ 1301 Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ 1601 Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ 2501 Legal Malpractice | 1, 2, 3 |
| | | ☐ 2502 Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☑ 3501 Other Non-Personal Injury/Property Damage Tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ 3601 Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ 1501 Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ 1502 Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract / Warranty (06) (not insurance) | ☐ 0601 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ 0602 Contract/Warranty Breach – Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ 0603 Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ 0604 Other Breach of Contract/Warranty (no fraud/ negligence) | 1, 2, 5 |
| | | ☐ 0605 Breach of Rental/Lease Contract (COVID-19 Rental Debt) | 2, 5 |
| | Collections (09) | ☐ 0901 Collections Case – Seller Plaintiff | 5, 6, 11 |
| | | ☐ 0902 Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ 0903 Collections Case – Purchased Debt (charged off consumer debt purchased on or after January 1, 2014) | 5, 6, 11 |
| | | ☐ 0904 Collections Case – COVID-19 Rental Debt | 5, 11 |
| | Insurance Coverage (18) | ☐ 1801 Insurance Coverage (not complex) | 1, 2, 5, 8 |

| SHORT TITLE | CASE NUMBER |
|---|---|
| The Labelle Foundation, et al v. Idexx Laboratories, Inc., et al | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Contract** (Continued) | Other Contract (37) | ☐ 3701 Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ 3702 Tortious Interference | 1, 2, 3, 5 |
| | | ☐ 3703 Other Contract Dispute (not breach/insurance/fraud/ negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/ Inverse Condemnation (14) | ☐ 1401 Eminent Domain/Condemnation<br><br>Number of Parcels _____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ 3301 Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ 2601 Mortgage Foreclosure | 2, 6 |
| | | ☐ 2602 Quiet Title | 2, 6 |
| | | ☐ 2603 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer – Commercial (31) | ☐ 3101 Unlawful Detainer – Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Residential (32) | ☐ 3201 Unlawful Detainer – Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Post Foreclosure (34) | ☐ 3401 Unlawful Detainer – Post Foreclosure | 2, 6, 11 |
| | Unlawful Detainer – Drugs (38) | ☐ 3801 Unlawful Detainer – Drugs | 2, 6, 11 |
| **Judicial Review** | Asset Forfeiture (05) | ☐ 0501 Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ 1101 Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ 0201 Writ – Administrative Mandamus | 2, 8 |
| | | ☐ 0202 Writ – Mandamus on Limited Court Case Matter | 2 |
| | | ☐ 0203 Writ – Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ 3901 Other Writ/Judicial Review | 2, 8 |
| | | ☐ 3902 Administrative Hearing | 2, 8 |
| | | ☐ 3903 Parking Appeal | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ 0301 Antitrust/Trade Regulation | 1, 2, 8 |
| | Asbestos (04) | ☐ 0401 Asbestos Property Damage | 1, 11 |
| | | ☐ 0402 Asbestos Personal Injury/Wrongful Death | 1, 11 |

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

| SHORT TITLE | CASE NUMBER |
|---|---|
| The Labelle Foundation, et al v. Idexx Laboratories, Inc., et al | |

| | **A**<br>Civil Case Cover Sheet Case Type | **B**<br>Type of Action<br>(check only one) | **C**<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Provisionally Complex Litigation** (Continued) | Construction Defect (10) | ☐ 1001 Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ 4001 Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ 2801 Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ 3001 Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ 4101 Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ 2001 Sister State Judgment | 2, 5, 11 |
| | | ☐ 2002 Abstract of Judgment | 2, 6 |
| | | ☐ 2004 Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ 2005 Petition/Certificate for Entry of Judgment Unpaid Tax | 2, 8 |
| | | ☐ 2006 Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ 2701 Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (not specified above) (42) | ☐ 4201 Declaratory Relief Only | 1, 2, 8 |
| | | ☐ 4202 Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ 4203 Other Commercial Complaint Case (non-tort/noncomplex) | 1, 2, 8 |
| | | ☐ 4204 Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ 2101 Partnership and Corporation Governance Case | 2, 8 |
| | Other Petitions (not specified above) (43) | ☐ 4301 Civil Harassment with Damages | 2, 3, 9 |
| | | ☐ 4302 Workplace Harassment with Damages | 2, 3, 9 |
| | | ☐ 4303 Elder/Dependent Adult Abuse Case with Damages | 2, 3, 9 |
| | | ☐ 4304 Election Contest | 2 |
| | | ☐ 4305 Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ 4306 Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ 4307 Other Civil Petition | 2, 9 |

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

| SHORT TITLE | CASE NUMBER |
|---|---|
| The Labelle Foundation, et al v. Idexx Laboratories, Inc., et al | |

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address, which is the basis for the filing location including zip code. (No address required for class action cases.)

| REASON: | ADDRESS: |
|---|---|
| ☑ 1. ☐ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11 | |

| CITY: | STATE: | ZIP CODE: |
|---|---|---|
| | | |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the ___Central___ District of the Superior Court of California, County of Los Angeles [Code of Civ. Proc., 392 et seq., and LASC Local Rule 2.3(a)(1)(E)]

Dated: 01/05/2024 _____

_____
(SIGNATURE OF ATTORNEY/FILING PARTY

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.
2. If filing a Complaint, a completed Summons form for issuance by the Clerk.
3. Civil Case Cover Sheet Judicial Council form CM-010.
4. Civil Case Cover Sheet Addendum and Statement of Location form LASC CIV 109 (01/23).
5. Payment in full of the filing fee, unless there is a court order for waiver, partial or schedule payments.
6. A signed order appointing a Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court to issue a Summons.
7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the Summons and Complaint, or other initiating pleading in the case.

LASC CIV 109 Rev. 01/23

For Mandatory Use

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

LASC Local Rule 2.3

Todd M. Friedman (216752)
Adrian R. Bacon (280332)
**Law Offices of Todd M. Friedman, P.C.**
21031 Ventura Blvd., Suite 340
Woodland Hills, CA 91364
Phone: 323-306-4234
Fax: 866-633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com

Brian D. Flick (Pro Hac Vice Pending)
Marc E. Dann (Pro Hac Vice Pending)
Andrew M. Engel (Pro Hac Vice Pending)
DannLaw
15000 Madison Avenue
Cleveland, Ohio 44107
(216) 373-0539 telephone
(216) 373-0536 facsimile

**Attorneys for Plaintiff**

Electronically FILED by
Superior Court of California,
County of Los Angeles
1/05/2024 2:27 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Nunez, Deputy Clerk

### SUPERIOR COURT OF THE STATE OF CALIFORNIA
### FOR THE COUNTY OF LOS ANGELES
### UNLIMITED JURISDICTION

| | |
|---|---|
| **THE LABELLE FOUNDATION, INC., ELOISE RESCUE, 4 PAWS KIDDO RESCUE, ANIMALDEFENSERESCUE.ORG, WESTSIDE GERMAN SHEPHERD RESCUE OF LOS ANGELES, INC., AND LISA RITZ**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>     vs.<br><br>**IDEXX LABORATORIES, INC.; DOES 1 through 10, inclusive,**<br><br>Defendant.<br>_____ | Case No.   24STCV00360<br><br>**CLASS ACTION COMPLAINT**<br><br>**(Amount to exceed $25,000)**<br><br>1. Negligence<br>2. Negligent Misrepresentation<br>3. Fraud<br>4. Unjust Enrichment<br>5. Violation of the Business and Professions Code Sections 17200 *et seq.* (California Unfair Competition Law);<br>6. Violation of the Business and Professions Code Section 17500 |

Plaintiffs, The Labelle Foundation, Inc., Eloise Rescue, 4 Paws Kiddo Rescue, Animal Defense Rescue, Westside German Shepherd Rescue Of Los Angeles, Inc., and Lisa Ritz, individually and on behalf of all others similarly situated, bring this action against IDEXX Laboratories, Inc. ("Defendant" or "IDEXX") for damages and other relief caused by IDEXX's VetConnect Plus software. Plaintiffs make these allegations on personal information as to those allegations pertaining to itself and its personal circumstances, and upon information and belief, based on the investigation of counsel and facts that are a matter of public knowledge, on all other matters.

## I.    INTRODUCTION

1.      Defendant provides diagnostic and software products and services to veterinary practices worldwide.[1] The company describes itself as a "global leader in pet healthcare innovation"[2] and provides support to more than 50,000 veterinary practices.[3]

2.      Because of the advances in veterinary medicine, diagnostic tests, like those provided by IDEXX, have become more and more prevalent in the evaluation, diagnosis, and treatment of pets. In fact, use of, and reliance on, such tests has become the industry and professional standard for veterinarians in the United States.

3.      IDEXX offers cloud-based veterinary software, including VetConnect Plus (VC+), to "simplify the flow of information" and "bring clarity to clinical decision-making."[4] Since 2012, IDEXX has invested more than $450 million in research and development. Part of that investment supports ongoing development and deployment of new features in VC+.[5]

4.      VC+ is a Java-based app that runs on Google App Engine. VC+ allows its users to access test results, compare results to IDEXX Reference Laboratories, collaborate with referral practices in real time, and share client-friendly summaries with their customers.[6] The app is free and accessible from any device, including laptop and desktop computers running practice management systems or via the web, or by using the VetConnect PLUS app on iOS and Android mobile devices.

---

[1] https://www.idexx.com/en/about-idexx/ (last visited October 26, 2023).
[2] https://www.idexx.com/en/ (last visited October 26, 2023).
[3] https://www.idexx.com/en/about-idexx/ (last visited October 26, 2023).
[4] https://www.idexx.com/en/veterinary/software-services/ (last visited October 26, 2023).
[5] https://cloud.google.com/customers/idexx-laboratories (last visited October 26, 2023).
[6] https://cloud.google.com/customers/idexx-laboratories (last visited October 26, 2023).

5.      According to IDEXX Corporate Vice President and Chief Software Engineering Officer, Jeffrey Dixon, "IDEXX customers who use the app exhibit higher loyalty than customers who don't, which is important in a recurring revenue business model."[7]

6.      While VC+ users pay nothing to access a patient's test results, tests ordered from IDEXX Reference Labs vary in cost depending on an array of factors. For example, IDEXX provides a list of "suggested in-clinic protocol" tests for canines and felines that range in price from $200.00 to $334.00.[8]

7.      Each patient and client that is entered into the VC+ software is given a unique identification number that is located in the patient's profile account. Additionally, VC+ users can edit a patient profile by inserting basic information including but not limited to, patient name, species, gender, and age.[9]

8.      To order a test in VC+, users must select an existing patient or add a new patient. VC+ will not allow a user to select a test unless all required information is entered into the patient's profile. Once that step is complete, users can select a test from a list of frequently ordered tests; search for a test by name, test code, or test component; and/or choose from featured tests, tests for specific diseases, tests organized by body system, or tests organized by categories.

9.      Patient test results can be viewed under a tab labeled, "history" which lists diagnostic results by date. In the event a user is unable to locate a patient's test results, VC+ includes built-in search tools such as "suggested matches" and "search for matches" to find alternative patients who might have been confused with the current patient. For example, "suggested matches" will list any patient that VC+ recognizes as a close match, while "search for matches" allows a user to search for patients with similar names, and/or IDs.[10]

10.     Despite IDEXX's representations that VC+ brings "clarity to clinical decision-making" VC+ users were devastated and confused when they discovered that, somehow, they had inadvertently misdiagnosed numerous patients, resulting in infectious disease outbreaks and patient death.

---

[7] https://cloud.google.com/customers/idexx-laboratories (last visited October 26, 2023).
[8] https://www.idexx.com/media/filer_public/ac/b4/acb4078f-64c7-4d70-b9e4-0b78a2355a10/2023-directory-products-services-nz.pdf (last visited October 31, 2023)
[9] https://www.idexx.com/files/vcplus_release_02.08.2017.pdf (last visited October 31, 2023)
[10] https://www.idexx.com/files/vc-vcplus-user-guide.pdf (last visited October 31, 2023)

11.     It was later discovered that IDEXX included an algorithm in VC+ that automatically merged patient records with similarly named patients. For example, IDEXX's algorithm might locate and merge patients named "Stella Ball" and "Molly Ball" due to the shared last name and placement of double "L's" in the first name.

12.     The merger of patient records by VC+ resulted in VC+ misreporting test results on individual patients. In the example provided above, the test results for Stella might be reported for Molly. The treating veterinarian would then rely on an incorrect test result in making clinical decisions regarding a particular animal.

13.     The automatic merger of patient records was never disclosed to VC+ users. As such, veterinarian providers were unaware of the potential hidden dangers associated with VC+.

14.      For years, IDEXX has known about the particular issues associated with the automatic merger of patient records but considered the problem low priority due to the clientele affected. i.e., animal shelters, rescues, and zoos.

15.     IDEXX's algorithm, which automatically merged patient records without warning to VC+ users, caused veterinarians to misdiagnose pets due to inaccurate test results, which led to infectious disease outbreaks and patient death.

16.     IDEXX owed a duty to the Plaintiffs and Class Members to implement and maintain its software to perform in a reliable manner consistent with reasonable standards and specifications.

17.     IDEXX failed to adequately review its software bugs or service tickets to determine  whether software issues impacted the software's ability to perform in a reliable manner consistent with reasonable standards and specifications. As a result, IDEXX's software failed to relay to its customers accurate test results. This failure led to prolonged, patient isolation, unnecessary treatment, additional diagnostic testing, infectious disease outbreaks, and patient death.

18.     Plaintiffs and the Class Members paid for the IDEXX diagnostic tests and services and trusted IDEXX to accurately report diagnostic results for their animals.

19.     IDEXX's software failed to deliver accurate test results, which left Plaintiffs and Class Members deprived of the significant value of the product for which they paid.

20.     Plaintiffs and Class Members bring claims for breach of fiduciary duty, breach

of contract, breach of good faith and fair dealing, negligence, fraud, unjust enrichment, violations of California Unfair Competition Law, and violations of California False Advertising Law against Defendant as a result of Defendant's failure to implement and maintain its software, specifically, VC+, to perform in a reliable manner consistent with reasonable standards and specifications.

21.     Plaintiffs and the Class Members by this action seek compensatory damages together with injunctive relief to remediate Defendant's failures.

## II.     JURISDICTION AND VENUE

22.     This Court has jurisdiction over this matter in that Defendant routinely transacts business in Los Angeles County.

23.     Venue in this Court is proper pursuant to Code of Civil Procedure Section 395 and 395.5, Business & Professions Code § 17203, 17204, and Civil Code §1780(c) because Defendants do business and a substantial number of the events or omissions giving rise to the claims at issue in this Complaint arose in Los Angeles. The Plaintiffs reside in Los Angeles County; thus, venue in Los Angeles is proper.

## III.     PARTIES

23.     Plaintiffs are entities or individuals who have purchased diagnostic testing services from veterinarians who used IDEXX Distribution, Inc. for such services and obtained results of those tests using the VC+ software.

24.     IDEXX Distribution, Inc. ("Defendant" or "IDEXX") is a corporation existing under the laws of the state of Massachusetts with its principal place of business located at One IDEXX Drive, Westbrook, Maine 04092.

25.     Defendant regularly conducts business throughout this District, the State of California, and the United States.

## IV.     FACTUAL ALLEGATIONS

26.     IDEXX is a medical devices company, focused on developing, manufacturing and distribution of products and provides services for the companion animal veterinary, poultry and livestock, dairy, and water testing markets. The company offers point-of-care veterinary diagnostic products, microbiological contaminant testing products (in water), livestock, and poultry diagnostic and health-monitoring products, laboratory diagnostic instruments, rapid assay test kits, veterinary reference laboratory diagnostics and consulting services, and practice

management and diagnostic imaging systems and services. Additionally, it offers human medical point-of-care and laboratory diagnostics.[11]

27.     The Company distributes products directly and through a network of distributors and resellers throughout the United States, Africa, Asia, Pacific, Canada, Europe, the Middle East, and Latin America.

28.     Defendant's research and development activities in the Companion Animal Group (CAG) segment focus on the development and introduction of new products, services, and technologies to provide veterinarians with diagnostic tools to support advanced medical care and information management solutions.

## V.     PLAINTIFF-SPECIFIC ALLEGATIONS

### *Plaintiff Labelle Foundation*

29.     Plaintiff The Labelle Foundation, Inc. ("Labelle") is a California nonprofit corporation with its place of business in Los Angeles, CA. Eloise is a 501(c)(3) charitable organization that performs animal rescue, fostering, and placement services in the Los Angeles area.

30.     Many of the animals Labelle works with have been abused or denied routine medical care. Before an animal can be placed for adoption, it must be thoroughly evaluated by a veterinarian for disease and injury. Labelle pays for these evaluations for every animal it deals with.

31.     In pursuing its mission to find homes for dogs, Labelle relies on private donations and placement fees to pay for veterinary care for animals. Placement fees for dogs it places for adoption average between $500 and $750 per dog. However, the average cost of routine, pre-adoption veterinary care is over $1,200 per dog. The difference is paid for through private donations.

32.     When Labelle rescues a dog, it asks a veterinarian to evaluate the animal's health. Such evaluation includes testing for infectious disease. Labelle's preferred veterinary provider, Animal Treatment and Surgical Center ("ATSC"), uses IDEXX for its testing and retrieves test results using the VC+ software. IDEXX's charges for the testing are passed through to Labelle by ATSC and paid for by Labelle.

---

[11] https://www.globaldata.com/company-profile/idexx-laboratories-inc/ (last visited October 26, 2023).

33.     The accuracy of the diagnostic tests performed on the animals Labelle seeks to place for adoption is critical in determining what treatment, if any, is required for the animal. Labelle relies on the test results in representing to adoption candidates the health of the animal.

34.     Labelle handles about 100 pet adoptions per month. As a result, Labelle spends hundreds of thousands of dollars every year on animal evaluations. A bulk of that amount is spent on diagnostic testing, such as that performed by IDEXX.

35.     In August 2023, ATSC began to question the integrity of the test results it was receiving from IDEXX through VC+. Upon further research, ATSC learned of the problem with the VC+ software–the automatic merging of patient files and the reporting inaccurate results. ATSC reported its concerns to IDEXX and disclosed its concerns to its customers, like Labelle.

36.     Over the past few years, Labelle has had dozens of situations in which it believes the test results reported through VC+ did not correlate with clinical observations made by veterinarians. Nonetheless, because of applicable professional standards, final diagnosis and treatment decisions are made in reliance on the test results.

37.     If an animal reportedly tests positive for a disease, such as distemper or parvovirus, Labelle pays for the appropriate treatment, which often includes specialized boarding and veterinary care with a veterinary provider. Such care often costs thousands of dollars. Then, after the course of treatment, the animal must be retested to ensure it is disease-free.

38.     On the other hand, if a test result is reported as being negative, Labelle has relied on that result to place the animal in a new home. At least one adoptive family has complained about receiving a dog from Labelle that was ill. Because that animal was young at the time it was adopted, it was not yet fully vaccinated, so it is impossible to determine if the animal was infected when it was placed or became infected later.

39.     Because of the erroneous test results reported through the VC+ software, Labelle believes that it has needlessly spent tens of thousands of dollars on repeat tests and treatment of animals. It has also lost pets that were not diagnosed or misdiagnosed because of the erroneous results.

40.     Because of the number of errors which have occurred in the reporting of IDEXX test results through VC+, Labelle can no longer trust the test results it pays for and has

therefore curtailed its fostering and placement services. It cannot, in good conscience, represent to prospective adopters that an animal is healthy when it knows the tests results from IDEXX are not reliable. As a result, it has had to turn away animals that need a loving home, which, in the past, it would have accepted for fostering and placement.

### Plaintiff Eloise Rescue

41.     Plaintiff Eloise Rescue ("Eloise") is a California nonprofit corporation with its place of business in Los Angeles, CA. Eloise is a 501(c)(3) charitable organization that performs animal rescue and placement services in the Los Angeles area.

42.     As part of its mission, when Eloise accepts a rescue animal, it has the animal examined by a veterinarian and asks that thorough testing be performed on the animal, including blood tests for contagious diseases.

43.     Eloise relies on private donations and placement fees to fund its operations, including paying for veterinary care for animals.

44.     Eloise relies on the results of the veterinarian's examination and test results in advertising the animal for placement with an adoptive family. Eloise does not place animals for adoption if the animal is not disease-free.

45.     If blood tests for an animal indicate the presence of disease, such as distemper or parvovirus, Eloise has the animal treated for the disease before placement in an adoptive home.

46.     When Eloise rescues a dog, it has a veterinary hospital evaluate the animal's health. Such evaluation includes testing for infectious disease. At all relevant times, Eloise's preferred veterinary provider, ATSC, used IDEXX for its testing and retrieved test results using the VC+ software. IDEXX's charges for performing the testing are passed through to Eloise by ATSC and paid for by Eloise.

47.     As with Labelle, ATSC disclosed to Eloise its concerns about the accuracy of test results received through VC+.

48.     Eloise suspects at least three instances when VC+ relayed erroneous test information regarding animals Eloise had rescued and tested.

49.     In one instance, a dog was tested for distemper. The test was returned by VC+ as being positive for distemper.

50.     In accordance with its standard practice, and even though the animal did not present the usual symptoms for distemper, Eloise had its provider treat the animal for the

disease. The treatment required isolation of the dog at the provider's facility and professional treatment costing hundreds, if not thousands, of dollars.

51.     After treatment, the provider performed another test for distemper. This second test was returned by IDEXX's VC+ software as negative for distemper.

52.     Eloise then elected to have the dog tested a third time for distemper. This third test was again positive even though the animal did not present symptoms for the disease.

53.     Eloise believes that the animal was never actually infected with distemper and that the treatment and additional testing it paid for was completely unnecessary.

54.     A second dog Eloise had evaluated was initially reported through VC+ as having tested negative for distemper.

55.     When the animal started to show signs of illness, Eloise had the animal tested again. The second test result reported through VC+ was positive for distemper. That dog died shortly after the test results were reported.

56.     Elosie believes that the animal was infected with distemper at the time of the first  test and VC+ misreported those test results.

57.     A third dog Eloise had evaluated was initially reported through VC+ as having tested negative for giardia, an intestinal disease caused by a parasite.

58.     Relying on the negative test result, Eloise placed the animal with an adoptive family.

59.     The animal subsequently tested positive for giardia, which required the adoptive family to treat the animal for the disease.

60.     Because of the number of errors which have occurred in the reporting of IDEXX test results through VC+, Eloise can no longer trust the test results it pays for and has therefore curtailed its operations. It cannot, in good conscience, represent to prospective adopters that an animal is healthy when it knows the tests results from IDEXX are not reliable.

### Plaintiff 4-Paws Kiddo Rescue

61.     Plaintiff 4 Paws Kiddo Rescue ("4 Paws") is a 501(c)(3) charitable organization with its place of business in Los Angeles, CA. 4 Paws is dedicated to helping dogs in need of socialization and medical care get assistance and care, and then help them to find healthy, permanent homes.

62.     4 Paws relies on private donations and placement fees to fund its operations,

including paying for veterinary care for animals.

63.    4 Paws relies on the results of the veterinarian's examination and test results in advertising the animal for placement with an adoptive family. 4 Paws does not place animals for adoption if the animal is not disease-free.

64.    If blood tests for an animal indicate the presence of disease, such as distemper or parvovirus, 4 Paws has the animal treated for the disease before placement in an adoptive home.

65.    4 Paws's preferred veterinary provider, ATSC, used IDEXX for its testing and retrieved test results using the VC+ software. IDEXX's charges for performing the testing are passed through to 4 Paws ATSC and paid for by 4 Paws.

66.    As with its other customers, ATSC disclosed to Eloise its concerns about the accuracy of test results received through VC+.

67.    4 Paws suspects at least one instance when VC+ relayed erroneous test information regarding animals 4 Paws had rescued and tested.

68.    4 Paws took three dogs to its veterinarian for testing. The animals had been together at 4 Paws's facility and remained boarded together at the veterinarian's facility. All three dogs were tested at the same time. VC+ reported the tests of two of the dogs as negative for distemper. One of the dogs, however, tested positive for distemper.

69.    Per standard care protocols, the dog that tested positive was isolated and treated for distemper. The dog was treated for three weeks and was again tested for distemper. The second test was reported by VC+ as being negative.

70.    At no time prior to or after VC+ reported the positive test result did the dog ever display any symptoms of distemper.

71.    The veterinarian care provided to the dog cost 4 Paws between approximately $2,500 and $3,000.

72.    4 Paws eventually placed the dog in a permanent home, however, because of the conflicting test results and the known error in VC+, it cannot be certain whether the dog is actually disease-free.

73.    Because of the number of errors which have occurred in the reporting of IDEXX test results through VC+, 4 Paws can no longer trust the test results it pays for and has therefore curtailed its operations. It cannot, in good conscience, represent to prospective adopters that an

animal is healthy when it knows the tests results from IDEXX are not reliable.

### *Plaintiff Animaldefenserescue.org*

74.    Animaldefenserescue.org ("ADR.org") is a 501(c)(3) charitable organization with its place of business in Eastsound, WA. ADR.org is dedicated to saving dogs from high kill shelters in California, assuring a thorough exam and procedures at a veterinary clinic in California before placing them in permanent homes, primarily in the greater Seattle area.

75.    ADR.org is a small rescue shelter small 501(c)(3) rescue organization that is operated entirely and single-handedly by a single volunteer, its founder, Annette Bowman. ADR.org is funded, in part, by placement fees for adopted dogs and some smaller private donations. However, most of ADR.org's operations are funded by Ms. Bowman out of her own pocket since 2011 when she founded ADR.org.

76.    All dogs that ADR.org adopts out are spayed or neutered and microchipped. ADR.org ensures that each dog has all bloodwork done, including testing for disease, and ensures all its dogs are fully vaccinated.

77.    ATSC provided ADR.org with veterinary services for some of its animals and used IDEXX for its testing and retrieved test results using the VC+ software. IDEXX's charges for performing the testing are passed through to ADR.org by ATSC and paid for by ADR.org.

78.    ADR.org suspects at least two instances when dogs rescued by ADR.org were affected by erroneous test information relayed through VC+.

79.    ADR.org rescued two dogs in the greater Los Angeles area. At the time, the dogs were, in fact, ill with upper respiratory pneumonia. ADR.org had its veterinarian treat the dogs for their illnesses. The dogs responded well to treatment and their conditions improved, however, the animals then relapsed without apparent reason.

80.    ADR.org believes the dogs were reinfected by other animals whose IDEXX test results were erroneously reported to the provider.

81.    As a result, ADR.org paid thousands of dollars in treatment and quarantine boarding for the animals. It also paid for numerous rounds of testing for the animals, only to realize recently that test results reported to its provider through VC+ were untrustworthy.

82.    Because of the number of errors which have occurred in the reporting of IDEXX test results through VC+, ADR.org can no longer trust the test results it pays for and has therefore curtailed its operations. It cannot, in good conscience, represent to prospective

adopters that an animal is healthy when it knows the tests results from IDEXX are not reliable. This, in turn, has resulted in decreased revenue from placements of animals in permanent homes.

### *Plaintiff Lisa Ritz*

83. Lisa Ritz ("Ritz") is an animal lover who has volunteered as an animal rescuer in Los Angeles, CA for several years. In the course of her rescue work, Ritz obtained medical care for rescued dogs and cats, which care has included testing for disease.

84. Ritz often had ATSC provide care for her animals, and ATSC used IDEXX for its testing and retrieved test results using the VC+ software. IDEXX's charges for performing the testing are passed through to Ritz by ATSC and paid for by Ritz.

85. Ritz suspects at least two instances when VC+ relayed erroneous test information regarding cats Ritz had rescued and tested for infectious disease. VC+ reported the tests of both cats as being negative for distemper, but the animals soon developed symptoms of the diseases and died.

86. Because of the number of errors which have occurred in the reporting of IDEXX test results through VC+, Ritz can no longer trust the test results it pays for and has therefore curtailed her efforts. She cannot, in good conscience, represent to prospective adopters that an animal is healthy when it knows the tests results from IDEXX are not reliable.

87. Moreover, Ritz now fears that she might have unknowingly placed sick animals into homes after representing to the adopting family that the animal tested negative for disease. Such an error could introduce disease to other animals in that home. In either event, Ritz fears that should could be held liable for the error.

## VI. CLASS ALLEGATIONS

88. Plaintiffs bring this action pursuant to Code of Civil Procedure section 382 on behalf of itself and a Class defined as follows:

> *Class*: All persons in the United States 1) who paid veterinary providers for IDEXX laboratory tests between Four years prior to the filing of the Complaint, through the date of class certification, and 2) those providers used VetConnect Plus to obtain the results related to those tests.

*California Subclass*: All persons in the Class who obtained such tests in the State of California.

The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

89.     Plaintiffs reserve the right to amend the Class definitions and to add sub-classes as appropriate if discovery and further investigation reveal that the Class should be expanded, otherwise divided into sub-classes, or modified in any way.

90.     **Numerosity**: Joinder of all members of the Class is impractical because approximately 50,000 veterinarian providers use IDEXX's products and services, and those veterinarian providers services hundreds of thousands of customers, including thousands of animal rescue organizations, shelters, and zoos. Plaintiffs reasonably estimate that there are tens of thousands of patient records throughout the United States that have been improperly merged due to IDEXX's faulty algorithm.

91.     **Commonality**. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

    a. Whether Defendant intentionally or by way of gross negligence created an algorithm that produced unreliable and inaccurate records for all Class Members who obtained test results through VetConnect Plus;

    b. Whether Defendant misrepresented the quality of its VetConnect Plus product;

    c. Whether Defendant represented that its VetConnect Plus program had characteristics and benefits it did not have;

    d. Whether Class Members have been injured by Defendant's conduct;

e.  Whether Plaintiffs and the Class are entitled to relief, and the amount and nature of such relief;

f.  Whether Plaintiffs and the Class are entitled to injunctive relief;

g.  Whether Defendant has engaged in unfair business practices in violation of California Unfair Competition Law (UCL), Cal. Bus. & Prof. Code, § 17200; and

h.  Whether Defendant made untrue or misleading statements in the advertisement of its products and/or services in violation of California False Advertising Law (FAL), Cal. Bus. & Prof. Code, § 17500.

92.  **Typicality**: Plaintiffs' claims are typical of the claims of other members of the Class, in that Plaintiffs and Class Members sustained damages arising out of the same acts and omissions of Defendant and their legal claims arise from the same IDEXX practices, as alleged herein.

93.  **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiffs' claims are made in a representative capacity on behalf of the other members of the Class. Plaintiffs have no interests antagonistic to the interests of the other members of the Class and are subject to no unique defenses. Plaintiffs have retained competent counsel to prosecute the case on behalf of Plaintiff and the Class.  Plaintiffs and Plaintiffs' counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so.

94.  **Predominance**. Defendant has engaged in a common course of conduct toward Plaintiffs and Class members. The common issues arising from the Defendant's conduct affecting Class members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

95.  **Superiority**: This case is appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small in comparison to the burden and expense of individual prosecutions of litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from

Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties and the court systems of many states and federal districts. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered, and uniformity of decisions ensured.

96.     **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's practices challenged herein apply to and affect Class Members uniformly, and Plaintiff's challenge to those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

## VII.    CAUSES OF ACTION

### COUNT I

### Negligence

### (On Behalf of Plaintiffs and the Class)

97.     Plaintiffs incorporate all of the allegations contained in the preceding paragraphs as if fully set forth herein.

98.     IDEXX owed Plaintiffs and Class Members a duty to produce, transfer, and/or store patient test results in a manner that maintained the integrity of those records and the accuracy of the test results.

99.     Plaintiffs and Class Members had a reasonable expectation that reasonable care would be exercised in the production, transfer, and/or storage of patient test results in VC+.

100.    Defendant had full knowledge of the types of harm that Plaintiffs and Class members could and would suffer if the integrity of patient test results was compromised.

101.    Defendant knew or reasonably should have known that the failure to exercise due care in producing, transferring, and/or storing patient test results in VC+ involved an unreasonable risk of harm to Plaintiffs and Class members.

102.    Plaintiffs and Class Members were the foreseeable and probable victims due to the fact that it was their patient's records that IDEXX produced, transferred, and stored via VC+. Defendant knew or should have known of the inherent risks in automatically merging patient records based solely on similar names without notice to Plaintiffs and Class Members.

103.    Given that IDEXX produces, transfers, and stores patient records on behalf of Plaintiffs and Class Members, a foreseeable risk of harm to Plaintiffs and Class Members existed and exists.

104.    Plaintiffs and Class Members had no ability to prevent and/or detect the merging of patient records and had no indication that Defendant was failing to implement and maintain reasonable methods to protect the integrity of patient records.

105.    Defendant was in a position to protect against the harm suffered by Plaintiffs and Class Members but failed to do so.

106.    Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiffs and Class Members by failing to implement and maintain reasonable methods to protect the integrity of patient records and accuracy of test results.

107.    Defendant, through its actions and/or omissions, unlawfully breached its duty to adequately and timely disclose to Plaintiffs, and Class Members the existence and scope of the errors associated with its algorithm.

108.    There is a close causal connection between Defendant's failure to produce, transfer, and store patient records of Plaintiffs and Class Members and the harm, or risk of imminent harm, suffered by Plaintiffs and Class Members.

109.    As a direct and proximate result of Defendant's numerous negligent acts and omissions, no member of the Class can guarantee the accuracy of patient test results.

110.    As a direct and proximate result of Defendant's numerous negligent acts and omissions, Plaintiffs and Class Members have suffered actual and concrete injuries and will suffer additional injuries in the future, including economic and non-economic damages.

111.    As a direct and proximate result of Defendant's negligence, Plaintiffs and Class members are entitled to recover actual and punitive damages.

///

///

///

<div align="center">

**COUNT II**

**Negligent Misrepresentation**

**(On Behalf of Plaintiffs and the Class)**

</div>

112.    Plaintiffs incorporate paragraphs 1–111 as if fully set forth herein.

113.    Defendant misrepresented to Plaintiffs and Class Members that it was providing accurate patient test results through its software application, VC+, when it was in fact improperly misplacing patient test results in the wrong files, thereby providing inaccurate patient test results.

114.    Defendant's representations were false and Defendant failed to exercise reasonable care in communicating patient test results to Plaintiffs and Class Members.

115.    Defendant was fully aware of the insufficiencies embedded in an algorithm it created and was further aware that the insufficiencies had the potential to provide inaccurate patient test results to Plaintiffs and Class Members.

116.    Plaintiffs and Class Members justifiably relied on Defendant's false information and were induced to obtain Defendant's products and services in reliance thereon.

117.    As a direct and proximate result of Defendant's numerous negligent acts and omissions, Plaintiffs and Class members have been substantially harmed because they purchased laboratory tests from IDEXX and received inaccurate results that led to infectious disease outbreaks and patient death.

118.    As a direct and proximate result of Defendant's negligent misrepresentation, Plaintiffs and Class Members are entitled to recover actual and punitive damages.

<div align="center">

**COUNT III**

**Fraud**

**(On Behalf of Plaintiffs and the Class)**

</div>

119.    Plaintiffs incorporate paragraphs 1–118 as if fully set forth herein.

120.    Defendant misrepresented to Plaintiffs and Class Members that it was providing accurate patient test results through its software application, VC+, when it was in fact improperly misplacing patient test results in the wrong files, thereby providing inaccurate patient test results.

121.    Defendant was fully aware of the insufficiencies embedded in an algorithm it created and was further aware that the insufficiencies had the potential to provide inaccurate

patient test results to Plaintiff and Class Members.

122. Defendant's misrepresentation and omissions were material. Plaintiffs and Class Members would not have purchased and used Defendant's products and services had they known that Defendant would provide inaccurate test results that would jeopardize their reputation in the community and place the animal population at risk for infectious disease and death.

123. Defendant intended to induce Plaintiffs and Class Members to rely on its misrepresentations and had reason to expect that Plaintiff and Class Members would rely on the misrepresentations that it made to them because of the continuous relationship between Defendant and the Class.

124. Plaintiffs and Class Members reasonably relied upon the representations Defendant made while placing laboratory test orders on behalf of its patients and clients.

125. Plaintiff and Class Members were justified in relying upon Defendant's representations that it would provide accurate test results because Defendant advertised itself as a "global leader in pet healthcare innovation" who provided support to more than 50,000 veterinary practices.

126. Plaintiff and Class Members have been substantially harmed because they purchased laboratory tests from IDEXX and received inaccurate results that led to infectious disease outbreaks and patient death.

127. As a direct and proximate result of Defendant's fraudulent misrepresentation, Plaintiffs and Class Members are entitled to recover actual and punitive damages.

## COUNT IV

### Unjust Enrichment

### (On Behalf of Plaintiffs and the Class)

128. Plaintiffs repeat and reallege paragraphs 1–127 as if fully set forth herein.

129. Defendant knew that the accuracy of test results was a material fact to consumers, including Plaintiffs and Class Members.

130. Because Defendants are responsible for, and control, the production, transfer, and storage of test results, Defendants knew and intended that their omissions and concealment of the potential for reporting inaccurate test results would mislead Plaintiffs and Class Members, and induce them to use, sign up for, and /or buy products and services that they

would otherwise not have been willing to purchase.

131.    Acting as reasonable consumers, had Plaintiffs and Class Members been aware of the true facts regarding Defendant's deficient and unreasonable data practices, they would have declined to purchase and/or subscribe to Defendants' services.

132.    Acting as reasonable consumers, Plaintiffs and Class Members could not have avoided the injuries suffered by Defendant's unlawful and unreasonable conduct.

133.    A benefit was conferred upon Defendant by payment for its laboratory tests with the understanding that Defendant would implement and maintain reasonable methods to produce, transfer, and/or store patient test results. Plaintiffs and Class Members should have received accurate and reliable test results from the Defendant.

134.    Defendant knew Plaintiffs and Class Members conferred a benefit which Defendant accepted. Defendant profited from these transactions and appreciated the benefits.

135.    Defendant failed to provide reasonable production, transfer, and storage of Plaintiffs and Class Members' patient records.

136.    Defendant should not be permitted to retain money rightfully belonging to Plaintiffs and Class Members, because Defendant failed to implement reasonable methods to produce, transfer, and/or store patient test results.

137.    Defendant accepted and wrongfully retained these benefits to the detriment of Plaintiffs and Class members.

138.    Defendant's enrichment at the expense of Plaintiffs and Class members is and was unjust.

139.    As a result of Defendant's wrongful conduct, as alleged above, Plaintiffs and Class members seek restitution of their money paid for laboratory tests and disgorgement of all profits, benefits, imposition of a constructive trust, and other compensation obtained by Defendant, plus attorneys' fees, costs, and interest thereon.

## <u>COUNT V</u>

### Unlawful Business Practices in Violation of Cal. Bus. & Prof. Code § 17200, *et seq.*

### (On Behalf of Plaintiff and the California Sub-Class)

140.    Plaintiffs repeat and reallege paragraphs 1–139 as if fully set forth herein.

141.    The Cal. Bus. & Prof. Code §§ 17200, et seq., provides that "unfair competition shall mean and include any unlawful, unfair or deceptive business act or practice and unfair,

deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) as Part 3 of Division 7 of the Business and Professions Code.

142.    Plaintiffs and Class Members have suffered injury in fact and have lost money as a result of Defendant's actions as set forth herein. Specifically, prior to the filing of this action, Plaintiffs and Class Members purchased laboratory tests from IDEXX who unfairly, unlawfully, deceptively, and misleadingly represented its capability to provide accurate, reliable, and definitive test results. Despite its representations, IDEXX delivered unreliable and inaccurate test results with catastrophic consequences. Therefore, Defendant's representations are likely to mislead and deceive consumers who read and rely upon the material representations that its products and services "create clarity" and provide resources for "effective clinical decision-making." Reasonable consumers such as the Plaintiffs and Class Members interpret terms like "effective," "accurate," "reliable," and "definitive" to mean that the information is correct, exact, and free from error. However, IDEXX delivered products and services that were riddled with error.

143.    In its marketing and advertising, Defendant makes false and misleading statements regarding the uses and benefits of its products and services.

144.    The misrepresentations by Defendant are material facts and constitute an unlawful business practice in violation of sections Cal. Bus. & Prof. Code §§ 17200, *et seq*.

145.    Plaintiffs and Class Members were misled and the misrepresentations and omissions were uniform and material.

146.    Pursuant to Business and Professions Code § 17203, Plaintiffs and Class members seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of advertising the sale and use of VC+. Additionally, Plaintiffs and Class Members request an order awarding restitution of the money wrongfully acquired by Defendant by means of responsibility attached to Defendant's failure to disclose the existence and significance of said misrepresentations.

147.    Plaintiffs and Class Members have suffered injury in fact and have lost money as a result of Defendant's false representations.

///

///

///

## COUNT VI

**False and Misleading Advertising in Violation of Cal. Bus. & Prof. Code §§ 17500 *et seq.***

**(On Behalf of Plaintiffs and the California Sub-Class)**

148.     Plaintiffs repeat and reallege paragraphs 1–147 as if fully set forth herein.

149.     This cause of action is brought pursuant to Business & Professions Code §§ 17500 *et seq.*

150.     Business & Professions Code § 17500 provides that it is unlawful for any person or corporation, or any employee thereof "with intent directly or indirectly to dispose of real or personal property … or to induce the public to enter into any obligation relating thereto, to make or disseminate of cause to be made or disseminated before the public in this state, or to make of disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property … or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading …"

151.     In its advertising, Defendants makes false misleading statements that its products and services are accurate, reliable, effective, and definitive.

152.     Plaintiffs and Class Members purchased and used Defendant's products and services that Defendant unfairly, unlawfully, deceptively, and misleadingly represented to be accurate, reliable, effective, and definitive. Despite its representations, IDEXX delivered unreliable and inaccurate test results with catastrophic consequences. Therefore, Defendant's representations are likely to mislead and deceive consumers who read and rely upon the material representations that its products and services "create clarity" and provide resources for "effective clinical decision-making." Reasonable consumers such as the Plaintiffs and Class Members interpret terms like "effective," "accurate," "reliable," and "definitive" to mean that the information is correct, exact, and free from error. However, IDEXX delivered products and services that were riddled with error.

153.    Defendant engaged in the deceptive conduct alleged above, which included deceptive and untrue representations regarding its products and services, made to induce the public to purchase its products and services.

154.    In its marketing and advertising, Defendant makes knowingly false and misleading statements regarding the characteristics, uses, and benefits of its products and services.

155.    Defendant is aware that the claims that it makes about its products and services are false and misleading.

156.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

157.    Plaintiffs and Class Members were misled into purchasing products and services by Defendant's deceptive conduct as alleged.

158.    Plaintiffs and Class Members were misled and the misrepresentations and omissions were uniform and material.

159.    Pursuant to Business & Professions Code §§ 17203 and 17535, Plaintiffs and Class members seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of advertising the sale and use of VC+. Additionally, Plaintiffs and Class Members request an order awarding restitution of the money wrongfully acquired by Defendant by means of responsibility attached to Defendant's failure to disclose the existence and significance of said misrepresentations.

160.    Plaintiffs and Class Members have suffered injury in fact and have lost money as a result of Defendant's false representations.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs, individually and on behalf of the Class, request that the Court:

    A.  That the Court finds that this action satisfies the prerequisites for maintenance as a class action and certifying the Class defined herein;

    B.  That the Court appoint Plaintiffs as representatives of the Class;

    C.  That the Court appoint Plaintiffs' counsel as counsel for the Class;

    D.  That the Court enter judgment in favor of Plaintiffs and the Class against IDEXX;

E.  That the Court award Plaintiffs and the other Class Members actual damages and all other forms of available relief, as applicable;

F.  That the Court award Plaintiffs and the Class attorney's fees and costs, including interest thereon as allowed or required by law

G.  That the Court enter an injunction requiring Defendant to adopt, implement, and maintain adequate measures to protect the integrity of patient records and its testing process;

H.  That the Court Award Plaintiffs and Class Members pre- and post-judgment interest, to the extent allowable; and

I.  Granting all such further and other relief as the Court deems just and appropriate.


Respectfully Submitted

By: _____

Todd M. Friedman, Esq.
Law Offices of Todd M. Friedman, P.C.

Alisa R. Adams (California Bar # 277697)
The Dann Law Firm
26100 Towne Centre Dr
Foothill Ranch, CA 92610-3442
Telephone: (949) 200-8755
Facsimile: (866) 843-8308
notices@dannlaw.com
aadams@dannlaw.com

Marc E. Dann (OH 0039425)*
Brian D. Flick (OH 0081605)*
DannLaw
15000 Madison Avenue
Cleveland, OH 44107
(216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com

*Pro Hac Vice Applications Anticipated

*Counsel for Plaintiff and the Putative Class*

1

2

### DEMAND FOR JURY TRIAL

3

4  Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

5  By: _____

Todd M. Friedman, Esq.

6  Law Offices of Todd M. Friedman, P.C.

*Co-Counsel for Plaintiff and Putative Class*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
IDEXX LABORATORIES, INC.; DOES 1 through 10, inclusive

Electronically FILED by
Superior Court of California,
County of Los Angeles
1/05/2024 2:27 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Nunez, Deputy Clerk

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
THE LABELLE FOUNDATION, INC., ELOISE RESCUE, 4 PAWS KIDDO RESCUE, ANIMALDEFENSERESCUE.ORG,
WESTSIDE GERMAN SHEPHERD RESCUE OF LOS ANGELES, INC., AND LISA RITZ,
individually and on behalf of all others similarly situated

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Superior Court of Los Angeles

111 North Hill Street Los Angeles, CA 90012

**CASE NUMBER:**
*(Número del Caso):* 24STCV00360

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Todd M. Friedman,Law Offices of Todd M. Friedman,P.C.,21031 Ventura Blvd.,Suite 340, Woodland Hills, CA 91364,323-306-4234

DATE: 01/05/2024
*(Fecha)*
Clerk, by David W. Slayton, Executive Officer/Clerk of Court , Deputy
*(Secretario)* J. Nunez *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

**Page 1 of 1**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

 **Superior Court of California, County of Los Angeles**

<div style="border:1px solid black">

## ALTERNATIVE DISPUTE RESOLUTION (ADR)
## INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

</div>

### What is ADR?
ADR helps people find solutions to their legal disputes without going to trial.  The main types of ADR are negotiation, mediation, arbitration, and settlement conferences.  When ADR is done by phone, videoconference or computer, it may be called Online Dispute Resolution (ODR).  These alternatives to litigation and trial are described below.

### Advantages of ADR
- **Saves Time:**  ADR is faster than going to trial.
- **Saves Money:**  Parties can save on court costs, attorney's fees, and witness fees.
- **Keeps Control** (with the parties):  Parties choose their ADR process and provider for voluntary ADR.
- **Reduces Stress/Protects Privacy:**  ADR is done outside the courtroom, in private offices, by phone or online.

### Disadvantages of ADR
- **Costs:**  If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- **No Public Trial:**  ADR does not provide a public trial or decision by a judge or jury.

### Main Types of ADR
1. **Negotiation:**  Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial.  If the parties have lawyers, they will negotiate for their clients.

2. **Mediation:**  In mediation, a neutral mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all.  Mediators do not decide the outcome.  Parties may go to trial if they decide not to settle.

   **Mediation may be appropriate when the parties**
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

   **Mediation may not be appropriate when the parties**
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

**How to Arrange Mediation in Los Angeles County**

Mediation for **civil cases** is voluntary and parties may select any mediator they wish.  Options include:

   a.  **The Civil Mediation Vendor Resource List**
       If all parties in an active civil case agree to mediation, they may contact these organizations to request a "Resource List Mediation" for mediation at reduced cost or no cost (for selected cases).

   - **ADR Services, Inc.** Assistant Case Manager Janet Solis, janet@adrservices.com (213) 683-1600
   - **Mediation Center of Los Angeles** Program Manager info@mediationLA.org (833) 476-9145

   **These organizations cannot accept every case and they may decline cases at their discretion.** They may offer online mediation by video conference for cases they accept.  Before contacting these organizations, review important information and FAQs at www.lacourt.org/ADR.Res.List

   **NOTE:  The Civil Mediation Vendor Resource List program does not accept family law, probate, or small claims cases.**

   b.  **Los Angeles County Dispute Resolution Programs.**  Los Angeles County-funded agencies provide mediation services on the day of hearings in small claims, unlawful detainer (eviction), civil harassment, and limited civil (collections and non-collection) cases.
       https://dcba.lacounty.gov/countywidedrp/

       **Online Dispute Resolution (ODR).**  Parties in small claims and unlawful detainer (eviction) cases should carefully review the Notice and other information they may receive about (ODR) requirements for their case.  https://my.lacourt.org/odr/

   c.  Mediators and ADR and Bar organizations that provide mediation may be found on the internet.

3. **Arbitration:**  Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome.  In "binding" arbitration, the arbitrator's decision is final; there is no right to trial.  In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision.  For more information about arbitration, visit https://www.courts.ca.gov/programs-adr.htm

4. **Mandatory Settlement Conferences (MSC):**  MSCs are ordered by the Court and are often held close to the trial date or on the day of trial.  The parties and their attorneys meet with a judge or settlement officer who does not make a decision but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement.  For information about the Court's MSC programs for civil cases, visit https://www.lacourt.org/division/civil/CI0047.aspx

Los Angeles Superior Court ADR website:  https://www.lacourt.org/division/civil/CI0109.aspx
For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm

2019-GEN-014-00

**FILED**
Superior Court of California
County of Los Angeles

MAY 0 3 2019

Sherri R. Carter, Executive Officer/Clerk
By _____, Deputy
Rizalinda Mina

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

IN RE LOS ANGELES SUPERIOR COURT )      FIRST AMENDED GENERAL ORDER
— MANDATORY ELECTRONIC FILING )
FOR CIVIL                       )
                                )
                                )
                                )
_____)

On December 3, 2018, the Los Angeles County Superior Court mandated electronic filing of all documents in Limited Civil cases by litigants represented by attorneys. On January 2, 2019, the Los Angeles County Superior Court mandated electronic filing of all documents filed in Non-Complex Unlimited Civil cases by litigants represented by attorneys. (California Rules of Court, rule 2.253(b).) All electronically filed documents in Limited and Non-Complex Unlimited cases are subject to the following:

1) DEFINITIONS

   a) **"Bookmark"**  A bookmark is a PDF document navigational tool that allows the reader to quickly locate and navigate to a designated point of interest within a document.

   b) **"Efiling Portal"**  The official court website includes a webpage, referred to as the efiling portal, that gives litigants access to the approved Electronic Filing Service Providers.

   c) **"Electronic Envelope"**  A transaction through the electronic service provider for submission of documents to the Court for processing which may contain one or more PDF documents attached.

   d) **"Electronic Filing"**  Electronic Filing (eFiling) is the electronic transmission to a Court of a document in electronic form. (California Rules of Court, rule 2.250(b)(7).)

e) **"Electronic Filing Service Provider"**   An Electronic Filing Service Provider (EFSP) is a person or entity that receives an electronic filing from a party for retransmission to the Court. In the submission of filings, the EFSP does so on behalf of the electronic filer and not as an agent of the Court.   (California Rules of Court, rule 2.250(b)(8).)

f) **"Electronic Signature"**   For purposes of these local rules and in conformity with Code of Civil Procedure section 17, subdivision (b)(3), section 34, and section 1010.6, subdivision (b)(2), Government Code section 68150, subdivision (g), and California Rules of Court, rule 2.257, the term "Electronic Signature" is generally defined as an electronic sound, symbol, or process attached to or logically associated with an electronic record and executed or adopted by a person with the intent to sign the electronic record.

g) **"Hyperlink"**   An electronic link providing direct access from one distinctively marked place in a hypertext or hypermedia document to another in the same or different document.

h) **"Portable Document Format"**   A digital document format that preserves all fonts, formatting, colors and graphics of the original source document, regardless of the application platform used.

2) MANDATORY ELECTRONIC FILING

a) Trial Court Records

Pursuant to Government Code section 68150, trial court records may be created, maintained, and preserved in electronic format.  Any document that the Court receives electronically must be clerically processed and must satisfy all legal filing requirements in order to be filed as an official court record (California Rules of Court, rules 2.100, et seq. and 2.253(b)(6)).

b) Represented Litigants

Pursuant to California Rules of Court, rule 2.253(b), represented litigants are required to electronically file documents with the Court through an approved EFSP.

c) Public Notice

The Court has issued a Public Notice with effective dates the Court required parties to electronically file documents through one or more approved EFSPs.  Public Notices containing effective dates and the list of EFSPs are available on the Court's website, at www.lacourt.org.

d) Documents in Related Cases

Documents in related cases must be electronically filed in the eFiling portal for that case type if electronic filing has been implemented in that case type, regardless of whether the case has been related to a Civil case.

3) **EXEMPT LITIGANTS**

a) Pursuant to California Rules of Court, rule 2.253(b)(2), self-represented litigants are exempt from mandatory electronic filing requirements.

b) Pursuant to Code of Civil Procedure section 1010.6, subdivision (d)(3) and California Rules of Court, rule 2.253(b)(4), any party may make application to the Court requesting to be excused from filing documents electronically and be permitted to file documents by conventional means if the party shows undue hardship or significant prejudice.

4) **EXEMPT FILINGS**

a) The following documents shall not be filed electronically:

   i)   Peremptory Challenges or Challenges for Cause of a Judicial Officer pursuant to Code of Civil Procedure sections 170.6 or 170.3;

   ii)  Bonds/Undertaking documents;

   iii) Trial and Evidentiary Hearing Exhibits

   iv)  Any ex parte application that is filed concurrently with a new complaint including those that will be handled by a Writs and Receivers department in the Mosk courthouse; and

   v)   Documents submitted conditionally under seal. The actual motion or application shall be electronically filed. A courtesy copy of the electronically filed motion or application to submit documents conditionally under seal must be provided with the documents submitted conditionally under seal.

b) Lodgments

Documents attached to a Notice of Lodgment shall be lodged and/or served conventionally in paper form. The actual document entitled, "Notice of Lodgment," shall be filed electronically.

//

//

5) ELECTRONIC FILING SYSTEM WORKING PROCEDURES

Electronic filing service providers must obtain and manage registration information for persons and entities electronically filing with the court.

6) TECHNICAL REQUIREMENTS

a) Electronic documents must be electronically filed in PDF, text searchable format **when** technologically feasible without impairment of the document's image**.**

b) The table of contents for any filing must be bookmarked.

c) Electronic documents, including but not limited to, declarations, proofs of service, and exhibits, must be bookmarked within the document pursuant to California Rules of Court, rule 3.1110(f)(4).  Electronic bookmarks must include links to the first page of each bookmarked item (e.g. exhibits, declarations, deposition excerpts) and with bookmark titles that identify the bookedmarked item and briefly describe the item.

d) Attachments to primary documents must be bookmarked.  Examples include, but are not limited to, the following:

   i) Depositions;

   ii) Declarations;

   iii) Exhibits (including exhibits to declarations);

   iv) Transcripts (including excerpts within transcripts);

   v) Points and Authorities;

   vi) Citations; and

   vii) Supporting Briefs.

e) Use of hyperlinks within documents (including attachments and exhibits) is strongly encouraged.

f) Accompanying Documents

Each document acompanying a single pleading must be electronically filed as a **separate** digital PDF document.

g) Multiple Documents

Multiple documents relating to one case can be uploaded in one envelope transaction.

FIRST AMENDED GENERAL ORDER RE MANDATORY ELECTRONIC FILING FOR CIVIL

h) Writs and Abstracts

Writs and Abstracts must be submitted as a separate electronic envelope.

i) Sealed Documents

If and when a judicial officer orders documents to be filed under seal, those documents must be filed electronically (unless exempted under paragraph 4); the burden of accurately designating the documents as sealed at the time of electronic submission is the submitting party's responsibility.

j) Redaction

Pursuant to California Rules of Court, rule 1.201, it is the submitting party's responsibility to redact confidential information (such as using initials for names of minors, using the last four digits of a social security number, and using the year for date of birth) so that the information shall not be publicly displayed.

7) ELECTRONIC FILING SCHEDULE

a) Filed Date

i) Any document received electronically by the court between 12:00 am and 11:59:59 pm shall be deemed to have been effectively filed on that court day if accepted for filing. Any document received electronically on a non-court day, is deemed to have been effectively filed on the next court day if accepted. (California Rules of Court, rule 2.253(b)(6); Code Civ. Proc. § 1010.6(b)(3).)

ii) Notwithstanding any other provision of this order, if a digital document is not filed in due course because of: (1) an interruption in service; (2) a transmission error that is not the fault of the transmitter; or (3) a processing failure that occurs after receipt, the Court may order, either on its own motion or by noticed motion submitted with a declaration for Court consideration, that the document be deemed filed and/or that the document's filing date conform to the attempted transmission date.

8) EX PARTE APPLICATIONS

a) Ex parte applications and all documents in support thereof must be electronically filed no later than 10:00 a.m. the court day before the ex parte hearing.

b) Any written opposition to an ex parte application must be electronically filed by 8:30 a.m. the day of the ex parte hearing.  A printed courtesy copy of any opposition to an ex parte application must be provided to the court the day of the ex parte hearing.

9) PRINTED COURTESY COPIES

a) For any filing electronically filed two or fewer days before the hearing, a courtesy copy must be delivered to the courtroom by 4:30 p.m. the same business day the document is efiled.  If the efiling is submitted after 4:30 p.m., the courtesy copy must be delivered to the courtroom by 10:00 a.m. the next business day.

b) Regardless of the time of electronic filing, a printed courtesy copy (along with proof of electronic submission) is required for the following documents:

    i) Any printed document required pursuant to a Standing or General Order;

    ii) Pleadings and motions (including attachments such as declarations and exhibits) of 26 pages or more;

    iii) Pleadings and motions that include points and authorities;

    iv) Demurrers;

    v) Anti-SLAPP filings, pursuant to Code of Civil Procedure section 425.16;

    vi) Motions for Summary Judgment/Adjudication; and

    vii) Motions to Compel Further Discovery.

c) Nothing in this General Order precludes a Judicial Officer from requesting a courtesy copy of additional documents.  Courtroom specific courtesy copy guidelines can be found at www.lacourt.org on the Civil webpage under "Courtroom Information."

10) WAIVER OF FEES AND COSTS FOR ELECTRONICALLY FILED DOCUMENTS

a) Fees and costs associated with electronic filing must be waived for any litigant who has received a fee waiver.  (California Rules of Court, rules 2.253(b)(), 2.258(b), Code Civ. Proc. § 1010.6(d)(2).)

b) Fee waiver applications for waiver of court fees and costs pursuant to Code of Civil Procedure section 1010.6, subdivision (b)(6), and  California Rules of Court, rule 2.252(f), may be electronically filed in any authorized action or proceeding.

1   11) SIGNATURES ON ELECTRONIC FILING

2   For purposes of this General Order, all electronic filings must be in compliance with California

3   Rules of Court, rule 2.257. This General Order applies to documents filed within the Civil

4   Division of the Los Angeles County Superior Court.

5

6        This First Amended General Order supersedes any previous order related to electronic filing,

7   and is effective immediately, and is to remain in effect until otherwise ordered by the Civil

8   Supervising Judge and/or Presiding Judge.

9

10   DATED: May 3, 2019   

KEVIN C. BRAZILE

11                              Presiding Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Spring Street Courthouse<br>312 North Spring Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>01/05/2024<br>David W. Slayton, Executive Officer / Clerk of Court<br>By: _____ J. Nunez _____ Deputy |
| NOTICE OF CASE ASSIGNMENT<br><br>UNLIMITED CIVIL CASE | |
| **Your case is assigned for all purposes to the judicial officer indicated below.** | CASE NUMBER:<br>24STCV00360 |

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✔ | Kenneth R. Freeman | 14 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on 01/05/2024
  (Date)

David W. Slayton, Executive Officer / Clerk of Court

By J. Nunez , Deputy Clerk

LACIV 190 (Rev 6/18)
LASC Approved 05/06

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

<u>INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES</u>

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007.  They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date.  All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference.  These matters may be heard and resolved at this conference.  At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status.  If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**



**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties.  The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

**◆Los Angeles County Bar Association Litigation Section◆**

**◆ Los Angeles County Bar Association
Labor and Employment Law Section◆**

**◆Consumer Attorneys Association of Los Angeles◆**

**◆Southern California Defense Counsel◆**

**◆Association of Business Trial Lawyers◆**

**◆California Employment Lawyers Association◆**

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:        FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – EARLY ORGANIZATIONAL MEETING** | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1.  The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following*:

    a.  Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

    b.  Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

    c.  Exchange of names and contact information of witnesses;

    d.  Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

    e.  Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

    f.  Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

    g.  Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h.  Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i.  Whether the case is suitable for the Expedited Jury Trial procedures (see information at **www.lacourt.org** under "*Civil*" and then under "*General Information*").

2.  The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the  complaint, and _____ for the cross-
        (INSERT DATE)                                              (INSERT DATE)
complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at *www.lacourt.org* under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3.  The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case.  The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.  References to "days" mean calendar days, unless otherwise noted.  If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____                    ➤ _____
             (TYPE OR PRINT NAME)                                              (ATTORNEY FOR PLAINTIFF)
Date:

_____                    ➤ _____
             (TYPE OR PRINT NAME)                                              (ATTORNEY FOR DEFENDANT)
Date:

_____                    ➤ _____
             (TYPE OR PRINT NAME)                                              (ATTORNEY FOR DEFENDANT)
Date:

_____                    ➤ _____
             (TYPE OR PRINT NAME)                                              (ATTORNEY FOR DEFENDANT)
Date:

_____                    ➤ _____
             (TYPE OR PRINT NAME)                                              (ATTORNEY FOR _____)
Date:

_____                    ➤ _____
             (TYPE OR PRINT NAME)                                              (ATTORNEY FOR _____)
Date:

_____                    ➤ _____
             (TYPE OR PRINT NAME)                                              (ATTORNEY FOR _____)

| Print | Save | Clear |
|---|---|---|

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:                     FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – DISCOVERY RESOLUTION** | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

      i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

      ii. Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i. Also be filed on the approved form (copy attached);

      ii. Include a brief summary of why the requested relief should be denied;

**STIPULATION – DISCOVERY RESOLUTION**

    iii.    Be filed within two (2) court days of receipt of the Request; and

    iv.    Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied.  If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted.  If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date:

➢

_____
(TYPE OR PRINT NAME)

_____
(ATTORNEY FOR PLAINTIFF)

Date:

➢

_____
(TYPE OR PRINT NAME)

_____
(ATTORNEY FOR DEFENDANT)

Date:

➢

_____
(TYPE OR PRINT NAME)

_____
(ATTORNEY FOR DEFENDANT)

Date:

➢

_____
(TYPE OR PRINT NAME)

_____
(ATTORNEY FOR DEFENDANT)

Date:

➢

_____
(TYPE OR PRINT NAME)

(ATTORNEY FOR _____)

Date:

➢

_____
(TYPE OR PRINT NAME)

(ATTORNEY FOR _____)

Date:

➢

_____
(TYPE OR PRINT NAME)

(ATTORNEY FOR _____)

| Print | Save | | Clear |
|---|---|---|---|

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:                    FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:

    ☐   Request for Informal Discovery Conference
    ☐   Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. **For a Request for Informal Discovery Conference, <u>briefly</u> describe the nature of the discovery dispute, including the facts and legal arguments at issue.  For an Answer to Request for Informal Discovery Conference, <u>briefly</u> describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

| Print | Save | Clear |
|---|---|---|

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:                    FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

### SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| COURTHOUSE ADDRESS: |
|---|
| PLAINTIFF: |
| DEFENDANT: |

| **STIPULATION AND ORDER – MOTIONS IN LIMINE** | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine.  Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine.  In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions.  If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues.  For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference.  Each side's portion of the short joint statement of issues may not exceed three pages.  The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

## The following parties stipulate:

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR PLAINTIFF)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR _____)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR _____)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR _____)

## THE COURT SO ORDERS.

Date: _____

_____
JUDICIAL OFFICER

Print    Save        Clear

**FILED**

LOS ANGELES SUPERIOR COURT

MAY 1 1 2011

JOHN A. CLARKE, CLERK

*N. Navarro*

BY NANCY NAVARRO, DEPUTY

1
2
3
4
5
6
7            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

8                **FOR THE COUNTY OF LOS ANGELES**

9
10   General Order Re                )   ORDER PURSUANT TO CCP 1054(a),
     Use of Voluntary Efficient Litigation  )   EXTENDING TIME TO RESPOND BY
11   Stipulations                    )   30 DAYS WHEN PARTIES AGREE
                                      )   TO EARLY ORGANIZATIONAL
12                                    )   MEETING STIPULATION
                                      )
13   _____)

14
15        Whereas the Los Angeles Superior Court and the Executive Committee of the
16   Litigation Section of the Los Angeles County Bar Association have cooperated in
17   drafting "Voluntary Efficient Litigation Stipulations" and in proposing the stipulations for
18   use in general jurisdiction civil litigation in Los Angeles County;

19        Whereas the Los Angeles County Bar Association Litigation Section; the Los
20   Angeles County Bar Association Labor and Employment Law Section; the Consumer
21   Attorneys Association of Los Angeles; the Association of Southern California Defense
22   Counsel; the Association of Business Trial Lawyers of Los Angeles; and the California
23   Employment Lawyers Association all "endorse the goal of promoting efficiency in
24   litigation, and ask that counsel consider using these stipulations as a voluntary way to
25   promote communications and procedures among counsel and with the court to fairly
26   resolve issues in their cases;"
27
28

-1-

ORDER PURSUANT TO CCP 1054(a)

Whereas the Early Organizational Meeting Stipulation is intended to encourage cooperation among the parties at an early stage in litigation in order to achieve litigation efficiencies;

Whereas it is intended that use of the Early Organizational Meeting Stipulation will promote economic case resolution and judicial efficiency;

Whereas, in order to promote a meaningful discussion of pleading issues at the Early Organizational Meeting and potentially to reduce the need for motions to challenge the pleadings, it is necessary to allow additional time to conduct the Early Organizational Meeting before the time to respond to a complaint or cross complaint has expired;

Whereas Code of Civil Procedure section 1054(a) allows a judge of the court in which an action is pending to extend for not more than 30 days the time to respond to a pleading "upon good cause shown";

Now, therefore, this Court hereby finds that there is good cause to extend for 30 days the time to respond to a complaint or to a cross complaint in any action in which the parties have entered into the Early Organizational Meeting Stipulation.  This finding of good cause is based on the anticipated judicial efficiency and benefits of economic case resolution that the Early Organizational Meeting Stipulation is intended to promote.

IT IS HEREBY ORDERED that, in any case in which the parties have entered into an Early Organizational Meeting Stipulation, the time for a defending party to respond to a complaint or cross complaint shall be extended by the 30 days permitted

-2-

ORDER PURSUANT TO CCP 1054(a)

1   by Code of Civil Procedure section 1054(a) without further need of a specific court

2   order.

3

4   DATED: _May 11, 2011_

5                                   Carolyn B. Kuhl, Supervising Judge of the
6                                   Civil Departments, Los Angeles Superior Court

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-3-