JONATHAN E. ALTMAN (State Bar No. 170607)
jonathan.altman@mto.com
LAUREN A. BILOW (State Bar No. 344970)
lauren.bilow@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue
Los Angeles, California 90071-3426
Telephone:   (213) 683-9100
Facsimile:    (213) 687-3702

JEREMY A. LAWRENCE (State Bar No. 270866)
jeremy.lawrence@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105
Telephone:   (415) 512-4000
Facsimile:    (415) 512-4077

Attorneys for Defendant
IDEXX Laboratories, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE LABELLE FOUNDATION, INC., ELOISE RESCUE, 4 PAWS KIDDO RESCUE, ANIMALDEFENSERESCUE.ORG, WESTSIDE GERMAN SHEPHERD RESCUE OF LOS ANGELES, INC., and LISA RITZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>IDEXX LABORATORIES, INC., and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:24-cv-01131-FLA-SK<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT PURSUANT TO FEDERAL RULES 12(b)(6) AND 9(b)**<br><br>*[Filed concurrently with Request for Judicial Notice; Declaration of Lauren Bilow; and [Proposed] Order]*<br><br>Judge:   Hon. Fernando L. Aenlle-Rocha<br>Date:    May 31, 2024<br>Time:    1:30 P.M.<br>Ctrm:    6B, 6th Floor |

## NOTICE OF MOTION

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on May 31, 2024, at 1:30 pm, or as soon thereafter as the matter may be heard, in Courtroom 6B (6th Floor) of this Court, located at 350 West First Street, Los Angeles, CA 90012, Defendant IDEXX Laboratories, Inc. will and hereby does move the Court for an order dismissing the Complaint in this action pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.

This Motion is based upon the Memorandum of Points and Authorities, the Request for Judicial Notice ("RJN") and attached declaration, all other materials supporting this Motion, all pleadings on file, and any other matter submitted before or at the hearing.

This motion is made following the conference of counsel pursuant to L.R. 7-3 that took place on April 2, 2024 and further discussions that took place on April 18, 2024.

DATED: April 19, 2024            MUNGER, TOLLES & OLSON LLP


                                 By:     /s/ Jonathan E. Altman
                                     Jonathan E. Altman
                                     Attorneys for Defendant IDEXX
                                     Laboratories, Inc.

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION .................................................................................... 1

II.   BACKGROUND ..................................................................................... 1

    A.    IDEXX and VetConnect Plus ................................................... 1

    B.    Plaintiffs and ATSC ................................................................. 2

    C.    The Complaint's Inadequate Allegations Regarding IDEXX
       Testing ....................................................................................... 3

III.  ARGUMENT ........................................................................................... 5

    A.    The Amended Complaint Fails to Meet Federal Rule 8's
       Pleading Requirements ............................................................. 5

        1.    The AC Fails to Allege Facts Showing that Plaintiffs
           Suffered Any Harm Caused by IDEXX ....................... 5

    B.    In Addition, Each of Plaintiffs' Proposed Causes of Action Fails
       As a Matter of Law ................................................................. 11

        1.    Plaintiffs' Fraud-Based Claims Fail for Lack of Reliance ........ 11

        2.    Plaintiffs' Fraud-Based Claims (Counts II to V) Also Fail
           Because the Language Identified in the Amended
           Complaint Is Non-Actionable as a Matter of Law ................... 12

        3.    Counts II to V of the Amended Complaint Lack the
           Particularity Required by Federal Rule 9(b) ............................ 15

        4.    The Negligence Claim (Count I) Fails Under the
           Economic Loss Rule and Because It Is an Untenable
           Negligent Misrepresentation Claim .......................................... 17

           (a)    The Economic Loss Rule Bars the Negligence
               Claim ................................................................... 17

           (b)    Count I Fails Under the Law of Negligent
               Misrepresentation ............................................... 18

IV.   THE AMENDED COMPLAINT SHOULD BE DISMISSED WITH
    PREJUDICE ......................................................................................... 19

V.    ALTERNATIVELY, THE CLASS ACTION ALLEGATIONS
    SHOULD BE DISMISSED ................................................................... 20

VI.   CONCLUSION ..................................................................................... 22

MOTION TO DISMISS PURSUANT TO FEDERAL RULES 12(b)(6) AND 9(b)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*In re Actimmune Mktg. Litig.*,
   No. C 08-02376 MHP, 2010 WL 3463491 (N.D. Cal. Sept. 1, 2010)..................5

*Allstate Ins. Co. v. Countrywide Fin. Corp.*,
   824 F. Supp. 2d 1164 (C.D. Cal. 2011)...................................................4

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ..................................................................20, 21

*In re Apple Processor Litig.*,
   No. 18-CV-00147-EJD, 2022 WL 2064975 (N.D. Cal. June 8, 2022)...............14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..............................................................1, passim

*Asmodus, Inc. v. Junbiao Ou*,
   No. EDCV 16-2511 JGB (DTBx), 2017 WL 3575467 (C.D. Cal.
   June 20, 2017)...........................................................................6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..............................................................1, 5, 8, 9

*Bly-Magee v. California*,
   236 F.3d 1014 (9th Cir. 2001) .......................................................15

*In re Coca-Cola Prods. Mktg. & Sales Pracs. Litig.*,
   No. 20-15742, 2021 WL 3878654 (9th Cir. Aug. 31, 2021)........................21

*Cytyc Corp. v. Neuromedical Sys. Inc.*,
   12 F. Supp. 2d 296 (S.D.N.Y. 1998) ................................................14

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ........................................................21

*Ebeid ex rel. United States v. Lungwitz*,
   616 F.3d 993 (9th Cir. 2010) ........................................................15

*Eisen v. Porsche Cars N. Am., Inc.*,
   No. CV 11-9405 CAS, 2012 WL 841019 (C.D. Cal. Feb. 22, 2012) ................16

*Gardner v. Health Net, Inc.*,
  No. CV 10-2140 PA, 2010 WL 11597979 (C.D. Cal. Aug. 12, 2010) .................. 7

*Guzman v. Polaris, Indus.*,
  345 F.R.D. 174 (C.D. Cal. 2023) .......................................................................... 21

*Hawkins v. Kroger Co.*,
  906 F.3d 763 (9th Cir. 2018) ................................................................................... 5

*IBEW Loc. 595 Pension & Money Purchase Pension Plans v. ADT Corp.*,
  660 F. App'x 850 (11th Cir. 2016) ........................................................................ 14

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ........................................................................ 15, 16

*La Mar v. H&B Novelty & Loan Co.*,
  489 F.2d 461 (9th Cir. 1973) ................................................................................ 20

*Moore v. Apple, Inc.*,
  73 F. Supp. 3d 1191 (N.D. Cal. 2014) .................................................................. 11

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999) .............................................................................................. 21

*Patt v. Antech Diagnostics, Inc.*,
  No. 8:18-cv-01689, 2020 WL 5076970-JLS-DFM (C.D. Cal. May 18, 2020) ............................................................................................................ 19

*Patt v. Antech Diagnostics, Inc.*,
  No. 8:18-cv-01689-JLS-DFM, 2019 WL 6654078 (C.D. Cal. July 30, 2019) ................................................................................... 12, 13, 14, 15

*Perkins v. LinkedIn Corp.*,
  53 F. Supp. 3d 1190 (N.D. Cal. 2014) .................................................................... 6

*RBC Bearings Inc. v. Caliber Aero, LLC*,
  No. SA CV 12-1442 FMO (PLAx), 2013 WL 12129619 (C.D. Cal. Apr. 3, 2013) ......................................................................................................... 16

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ............................................................................... 5, 9

*Summers v. Earth Island Inst.*,
 555 U.S. 488 (2009) ................................................................21

*Williams v. Apple, Inc.*,
 449 F. Supp. 3d 892 (N.D. Cal. 2020)........................................11, 19

*Zinser v. Accufix Rsch. Inst., Inc.*,
 253 F.3d 1180 (9th Cir. 2001) ....................................................20

**STATE CASES**

*Bily v. Arthur Young & Co.*,
 3 Cal. 4th 370 (1992)................................................................18

*Durell v. Sharp Healthcare*,
 183 Cal. App. 4th 1350 (2010)....................................................12

*Friedman v. Merck & Co.*,
 107 Cal. App. 4th 454 (2003) ....................................................18

*People v. Kyrklund*,
 No. B204597, 2009 WL 1990023 (Cal. Ct. App. July 10, 2009) ...........3

*S. Cal. Gas Leak Cases*,
 7 Cal. 5th 391, 400 (2019)..........................................................17

*Sheen v. Wells Fargo Bank, N.A.*,
 12 Cal. 5th 905 (2022)..............................................................17

*Small v. Fritz Cos., Inc.*,
 30 Cal. 4th 167 (2003)..............................................................11

*In re Tobacco II Cases*,
 46 Cal. 4th 298 (2009) ..............................................................11

*Willemsen v. Mitrosilis*,
 230 Cal. App. 4th 622 (2014) ....................................................19

**STATE STATUTES**

Cal. Bus. & Prof. Code § 4825 ....................................................18

Cal. Bus. & Prof. Code § 4826(b) ................................................18

Cal. Bus. & Prof. Code § 17200 ....................................................4

-iii-

Cal. Bus. & Prof. Code § 17500 ................................................................. 4

Cal. Civ. Code §§ 2080.1 ......................................................................... 17

Cal. Civ. Code § 2080.3 .......................................................................... 17

**FEDERAL RULES**

Fed. R. Civ. P. 8 ............................................................................ 1, passim

Fed. R. Civ. P. 9(b) ............................................................. 1, 15, 16, 19

Fed. R. Civ. P. 23(b) .......................................................................... 20, 21

**TREATISES**

5 Witkin, *Summary of Cal. Law, Torts* § 721 (9th ed. 1988) .................................... 18

13 Witkin, *Summary of Cal. Law, Personal Property* § 129 (11th ed. 2023) ......................................................................................... 17

Restatement (Second) of Torts § 552 (Am. L. Inst. 1977) ...................................... 18

## I.    INTRODUCTION

Plaintiffs, animal shelter operators and customers of Animal Treatment and Surgical Center ("ATSC"), a local veterinary clinic recently suspended for unsanitary conditions conducive to spreading disease among its patients, allege that they believe ATSC misdiagnosed some of their animals.  Plaintiffs hope to bring a nationwide class action, erroneously pinning the blame for the suspected misdiagnoses on Defendant IDEXX Laboratories, Inc. ("IDEXX"), which is one of the nation's most trusted providers of products and services to veterinarians. According to the Amended Complaint ("AC"), IDEXX's VetConnect Plus ("VetConnect Plus" or "VC+") software caused the supposed ATSC misdiagnoses, and is also responsible for unidentified "disease outbreaks" throughout the country. The AC, however, contains literally nothing showing that VetConnect Plus led ATSC to misdiagnose anything, or contributed to disease outbreaks anywhere.  At most, the AC's allegations suggest significant problems at ATSC, and come nowhere near stating a viable claim against IDEXX.  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

As set forth in detail below, each of the AC's claims fails under Federal Rule of Civil Procedure 8 because the AC lacks factual allegations of actionable wrongdoing by IDEXX.  The AC is also subject to dismissal because it never pleads the necessary element of reliance in connection with its fraud-based claims; never identifies any potentially actionable false factual representations from IDEXX; and lacks the particularity required under Federal Rule of Civil Procedure 9(b).

## II.    BACKGROUND

### A.    IDEXX and VetConnect Plus

IDEXX provides diagnostic testing to veterinary practices worldwide.  AC ¶ 1.  The company is a global leader in pet healthcare innovation, and since 2012 IDEXX has invested more than $450 million in research and development.  *Id.* ¶ 5.

MOTION TO DISMISS PURSUANT TO FEDERAL RULES 12(b)(6) AND 9(b)

Through its research, development, and innovation, IDEXX has grown to support more than 50,000 veterinary practices.  *Id.* ¶ 1.

Among other products, IDEXX developed VetConnect Plus—software that allows veterinary users to access diagnostic test results in real time.  *Id.* ¶ 6.  To further support veterinarians, IDEXX has made VetConnect Plus accessible from any device, including laptop and desktop computers running practice management systems or via the Web, or on Apple and Android mobile devices.  *Id.*

VetConnect Plus attempts to house all records associated with each pet in separate patient folders, and veterinarians can view "[p]atient test results . . . under a tab labeled 'history,' which lists diagnostic results by date."  *Id.* ¶ 12.  VetConnect Plus contains an algorithm that automatically searches the test database for closely related pet names meeting certain search criteria, and includes those pets' test results in the diagnostic histories of a given pet.  The algorithm insures that veterinarians see a complete diagnostic history, and do not miss the results of an important prior test because someone inadvertently entered key patient information incorrectly when ordering a lab test.  Because test results may not always match within VetConnect Plus to the right animal's patient folder, the system also includes search tools such as "suggested matches" and "search for matches" to identify other patients in the database with similar names or identification numbers.  *Id.*

**B.    Plaintiffs and ATSC**

All Plaintiffs received their veterinary services from the now-suspended ATSC veterinary facility in Los Angeles.  *Id.* ¶¶ 32, 46, 66, 77, 88, 94.  According to the AC, Plaintiffs either "believe" or "suspect" that ATSC misdiagnosed certain of their animals.  *Id.* ¶¶ 36, 48–57, 68, 78–80, 89, 95.  When confronted with Plaintiffs' suspicions, ATSC blamed IDEXX.  *E.g.*, *id.* ¶ 35.  The AC, however, contains no specific facts supporting a claim that supposed deficiencies in IDEXX's test reporting software caused any of these alleged misdiagnoses.

The AC's absence of factual allegations on these points is particularly conspicuous in light of ATSC's track record.  ATSC's veterinarian license was recently suspended by the California Veterinary Medical Board.  Government inspections disclosed extremely unsanitary conditions and hygiene issues, including failing "to maintain[] effective separation or proper protocols to prevent the spread of contagious diseases."  *In re Pet. for Interim Suspension Order Against . . . ATSC PICO, Inc.*, No. 4602023001724 ¶ 36 (Cal. Veterinary Med. Bd. Feb. 2, 2024).[1]  The Board also found that ATSC's handwritten records were "very disorganized."  *Id.* ¶ 86.  Alexia Tiraki-Kyrklund, the primary owner/operator of ATSC, has a significant history of animal hoarding and abuse, including a 16-month prison sentence for animal abuse at one of her prior veterinary facilities.  *People v. Kyrklund*, No. B204597, 2009 WL 1990023 (Cal. Ct. App. July 10, 2009); *see also In re First Amended Accusation against . . . Chesterfield Square Pet Clinic*, No. 4602017000077 (Cal. Veterinary Med. Bd. Feb. 5, 2019) (yet another veterinary board complaint against a Tiraki-Kyrklund managed facility for dangerous conditions).

## C.   The Complaint's Inadequate Allegations Regarding IDEXX Testing

Although the AC claims that VetConnect Plus's algorithm for matching test results with patients "automatically merged patient records with similarly named patients," AC ¶ 15, it does not plead facts showing that this "matching issue" caused ATSC to misdiagnose any of Plaintiffs' rescue animals, or that the "matching issue" occurred at all in connection with any of their rescue animals.  Nor does the AC allege how frequently the alleged matching issue occurred, or, most significantly, *why* the licensed and trained veterinarian at ATSC failed to note whether multiple

---

[1] Dep't Consumer Affs. Search Details, https://search.dca.ca.gov/details/4604/ HSP/38781/d992c085c3afd8b4700e03578549b3ce (last visited Apr. 18, 2024).

1  test results had been "merged" under a single patient name, or how this "merger"

2  affected the veterinarian's ultimate diagnosis of any particular patient. The AC does

3  not even allege that VetConnect Plus is the sole means by which ATSC received test

4  results.

5  Although the AC is a putative nationwide class action, ATSC is the *only*

6  veterinary clinic in the nation that the AC specifically names as having failed

7  properly to recognize and work within the alleged limitations of the VetConnect

8  Plus algorithm. While the AC concludes repeatedly that the VetConnect Plus

9  algorithm "led to infectious disease outbreaks and patient death," *e.g.*, *id.* ¶ 20, it in

10  fact identifies no such disease outbreaks anywhere in the country, nor does it

11  specifically allege that any veterinarian misdiagnosed any animal because of the

12  algorithm, much less that any animal died due to the algorithm. Indeed, IDEXX is

13  aware of *no* misdiagnosis or death caused by Plaintiffs' so-called matching issue.

14  The Complaint purports to state claims for Negligence, Negligent

15  Misrepresentation, Fraud, Unlawful Business Practices under California Business

16  and Professions Code section 17200 ("UCL"), and False Advertising under

17  California Business and Professions Code section 17500.[2] Each claim fails as a

18  matter of law.

19

20

21

22

23

24

25

26

27

28

---

[2] Paragraph 26 of the AC refers to other causes of action that are not actually alleged in the AC. The original complaint contained this same mistake and IDEXX assumes Plaintiffs have repeated their error.

## III.    ARGUMENT

### A.    The Amended Complaint Fails to Meet Federal Rule 8's Pleading Requirements

As an initial matter, the AC fails to meet Rule 8's threshold pleading requirements for stating a legal claim.[3]  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  A court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A complaint must be dismissed if it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

### 1.    The AC Fails to Allege Facts Showing that Plaintiffs Suffered Any Harm Caused by IDEXX

The AC does not plead that VetConnect Plus's alleged merging of patient records caused Plaintiffs any harm.  Damage proximately caused by the defendant is an element of each of Plaintiffs' claims,[4] and Rule 8 requires concrete factual allegations that would support imposing legal liability on the defendant for such harm.  *In re Actimmune Mktg. Litig.*, No. C 08-02376 MHP, 2010 WL 3463491, at

---

[3] The AC explicitly invokes California law.  *E.g.*, AC ¶¶ 139, 176.  If this case proceeds, California law may not necessarily apply at later stages.  *Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F. Supp. 2d 1164, 1171 n.9 (C.D. Cal. 2011).

[4] CACI Nos. 400 (negligence), 1900 (fraud or deceit), 1903 (negligent misrepresentation); *Hawkins v. Kroger Co.*, 906 F.3d 763, 768 (9th Cir. 2018) (false advertising and unfair competition).

*10 (N.D. Cal. Sept. 1, 2010) (plaintiffs "must allege a plausible entitlement to relief, including a plausible causal chain of injury"), *aff'd*, 464 F. App'x 651 (9th Cir. 2011).

The necessary allegations do not appear in the AC. Nowhere does the AC allege that any particular animals were affected by the so-called "merger" or "matching issue" that is the only basis of IDEXX's supposed liability asserted in the AC. *See* AC ¶¶ 14–23. Only two specific animals are identified by name in the AC, yet there are no facts alleged to suggest that those animals had such "similar[] name[s]" to other animals that their patient folders were "automatically merged" in VetConnect Plus. *Id.* ¶ 15. For the various other unnamed animals referenced in the AC, Plaintiffs have failed to identify either the name of the animal at issue or the name of any other animals whose test results allegedly merged with that animal. Because Plaintiffs must know the names that they give their animals, they presumably know whether there are any contemporaneously tested animals with similar names and identification records. But the AC alleges *no* such facts to suggest any so-called "matching issue" occurred with regard to the various animals who are not identified by name. This omission is fatal to Plaintiffs' claims.

In the absence of any factual allegations establishing a plausible chain of causation between IDEXX's conduct and Plaintiffs' alleged injuries, the claims in the AC must be dismissed. *Asmodus, Inc. v. Junbiao Ou*, No. EDCV 16-2511 JGB (DTBx), 2017 WL 3575467, at *8 (C.D. Cal. June 20, 2017) ("the allegations are insufficient for the Court to . . . plausibly infer a causal relationship between any cognizable harm and Counterdefendants' purported breach"). As shown below, this is true of each and every Plaintiff named in the AC. *Perkins v. LinkedIn Corp.,* 53 F. Supp. 3d 1190, 1207 (N.D. Cal. 2014) (complaint must allege harm to named plaintiffs).

**<u>Labelle Foundation</u>**. The AC alleges only suspicions and speculation concerning the Labelle Foundation. It says there were "dozens of situations" in

which the Labelle Foundation "*believes* the test results reported through VC+ did not correlate with clinical observations made by veterinarians," but it does not actually allege any specific deficiencies in IDEXX's test result reporting. AC ¶ 36 (emphasis added). The AC does not allege anything about any particular test results received by the Labelle Foundation's veterinarian, or the veterinarian's clinical observations of any particular animals. Nor does the AC allege that any "merger" of test results affected any of the Labelle Foundation animals. This does not satisfy Rule 8's requirement to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The AC does allege that the Labelle Foundation once received a complaint from a family that a dog the family adopted "was ill," but the AC never links this illness to a deficiency in any IDEXX test reporting. AC ¶ 38. In fact, the AC concedes that the Labelle Foundation does not even know when the dog got sick. *Id.* This too fails to satisfy Rule 8. *Gardner v. Health Net, Inc.*, No. CV 10-2140 PA (CWx), 2010 WL 11597979, at *4 (C.D. Cal. Aug. 12, 2010) (allegation of causation that rested on "mere speculation and conjecture" failed to satisfy Rule 8 pleading standard).

***Eloise Rescue***. The AC's allegations about Eloise Rescue are similarly deficient. The AC identifies three dogs associated with Eloise Rescue but pleads no supporting facts showing that VetConnect Plus incorrectly reported any of the three dogs' test results.

In the first case, a dog previously vaccinated against distemper tested positive for the disease, but showed no clinical signs of distemper. Eloise personnel called IDEXX to inquire whether the earlier vaccine could have caused a false positive test. According to the AC, IDEXX informed Eloise that the earlier vaccine could not have been responsible for a false positive. Eloise chose not to retest the animal, but instead treated it for distemper. After treatment the dog tested negative for

distemper.  Later, the dog was tested again and was apparently still negative for distemper (though it did test positive for parvovirus).  AC ¶¶ 49–53.

Eloise Rescue says that it "believes" the dog never had distemper, *id.* ¶ 54, but alleges no facts to support that belief.  Indeed, the AC appears to allege only that the dog was successfully treated for distemper, but later contracted parvovirus.  Rule 8 requires more than this.

In the second situation involving Eloise Rescue, a dog named Waldo initially tested negative for distemper.  The dog later showed signs of illness.  Eloise tested the dog again, receiving a positive for distemper result.  Eloise "believes" that the dog was already infected with distemper at the time of its first test and that VetConnect Plus misreported those results.  *Id.* ¶¶ 55–57.

These allegations comport with the dog having contracted distemper after the first test, whether at Eloise or ATSC, or having been originally tested so early in the infection's progress that the test could not detect the illness.  In addition, the AC again contains nothing to link whatever happened to the dog with any VetConnect Plus test misreporting.  The AC expressly alleges the dog's name was Waldo, but identifies no similarly named dog tested whose results could possibly have been "merged" with Waldo's results.[5]

A third dog tested negative for giardia, was placed with an adoptive family, and then tested positive for giardia.  *Id.* ¶¶ 58–60.  The AC does not even suggest that either test was wrong (and obviously the dog could have developed giardia after it was placed).  *See id.*  The AC also contains nothing to suggest that any test "merger" played any role in this dog's test results.

In sum, none of Eloise Rescue's allegations satisfy the basic pleading requirements of *Twombly* and *Iqbal*.

---

[5] In fact, IDEXX has reviewed the Eloise files and found no evidence that any "matching issue" occurred regarding Waldo.

***4-Paws Kiddo Rescue ("4-Paws")***.  The AC alleges that 4-Paws "suspects" that ATSC in one instance received erroneous test results for one of its dogs.  *Id.* ¶ 68.  According to the AC, 4-Paws took three dogs to ATSC for testing.  Two tested negative for distemper and one, named Harlan, tested positive.  ATSC isolated Harlan and treated him for distemper; after three weeks, Harlan tested negative for distemper.  *Id.* ¶¶ 69–71.  Rather than drawing the obvious inference that a sick dog was treated and got better, 4-Paws implies that because the three dogs boarded together and only Harlan became ill, the initial test result was incorrect.  *Id.* ¶ 69.  This is merely a "naked assertion" that does not come close to meeting the *Iqbal* standard.  556 U.S. at 678.

Once again, 4-Paws presumably knows the names it has given dogs in its care, yet the AC fails to allege any facts remotely suggesting that VetConnect Plus inadvertently merged Harlan's test results with any other similarly named animal tested around the same time.[6]  Absent concrete facts pleading that VetConnect Plus misreported test results because of a supposed "matching issue," Plaintiffs fail to "nudge[]" their "claim[] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

***Animaldefenserescue.org ("ADR.org")***.  The AC never claims that any animals in ADR.org's care received erroneous test results.  Instead, it alleges that ADR.org "believes" that two of its dogs being treated by ATSC were infected by *other* animals at ATSC whose test results were "erroneously reported."  AC ¶ 80.  But the AC alleges no facts supporting this belief.  It identifies: (1) no incorrect test reports through VetConnect Plus; (2) no animals that would have been capable of reinfecting the dogs at issue; (3) no contact sufficient to reinfect the two dogs at issue; and (4) no facts inconsistent with any reinfection being attributable to ATSC's

---

[6] As with Waldo, IDEXX has checked its records regarding Harlan and found no evidence of any "matching issue."

1    unsanitary conditions.  Nor does the AC assert that any alleged test merger had

2    anything to do with whatever happened to ADR.org.  This Court need not and

3    should not allow the AC to proceed based on Plaintiffs' bare belief, unsupported by

4    any actual facts.  *Sprewell*, 266 F.3d at 988.

5        ***Westside German Shepherd Rescue of Los Angeles ("Westside")***.  Westside

6    suspects one instance of VetConnect Plus relaying incorrect information.  AC

7    ¶¶ 89–91.  According to the AC, one of Westside's dogs tested positive for

8    distemper despite having been vaccinated within the prior three months.  In addition,

9    the dog showed no symptoms—though the AC is not entirely consistent on this

10   point, as it implies that the dog may have shown symptoms of kennel cough.  *See id.*

11   ¶ 91.  While Westside suspected the distemper result might have been incorrect, it

12   treated the dog rather than retesting it.  Although the AC's allegations fail to make

13   clear precisely what happened next, the dog apparently tested negative for distemper

14   after treatment, but had developed (or always had) kennel cough.  *Id.*

15       This appears to be another allegation that a sick dog got better after treatment.

16   The AC pleads no facts even remotely suggesting the presence of a "matching

17   issue" affecting this unidentified dog.

18       ***Lisa Ritz***.  The AC alleges only that Ritz "suspects" two instances of

19   erroneous test reporting, but this is another situation where animals (two cats) tested

20   negative and then later contracted distemper.  *Id.* ¶ 95.  The AC does not allege

21   when the tests were taken, whether any sort of test merger occurred, when or how

22   the cats contracted distemper, or when the cats were confirmed to be sick.  No facts

23   are alleged that would support a reasonable inference that IDEXX's VetConnect

24   Plus system caused harm to Ritz.

25                                *    *    *

26       In short, none of the Plaintiffs allege facts to support the conclusion that any

27   supposed "matching issues" with VetConnect Plus affected any of the animals in

28   their care.  Because the AC's Plaintiff-by-Plaintiff discussion is utterly lacking in

"factual content that allows [this Court] to draw the reasonable inference that the defendant is liable for the misconduct alleged," the AC fails as a matter of law under Rule 8 and should be dismissed with prejudice. *Iqbal*, 556 U.S. at 678.

### B. In Addition, Each of Plaintiffs' Proposed Causes of Action Fails As a Matter of Law

#### 1. Plaintiffs' Fraud-Based Claims Fail for Lack of Reliance

Counts II through V of Plaintiffs' AC sound in fraud and each requires proof of actual reliance. Plaintiffs, however, fail to plead reliance on any alleged IDEXX misrepresentation. Consequently, their fraud-based claims fail as a matter of law.

The AC accuses IDEXX of fraudulent misrepresentation under all three prongs of the UCL. AC ¶¶ 161–63 (fraudulent); ¶¶ 170–71 (unlawful); ¶¶ 151, 154 (unfair). Consequently, to state a claim under any of the UCL's three prongs, Plaintiffs must allege actual reliance on IDEXX representations. *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1200 (N.D. Cal. 2014) ("the Court has consistently required allegations of actual reliance and injury at the pleading stage for claims under all three prongs of the UCL where such claims are premised on misrepresentations").

The same is true of Plaintiffs' False Advertising cause of action, which makes the identical misrepresentation claim. AC ¶¶ 178–79, 184; *see Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 913 (N.D. Cal. 2020) ("[t]o make the reliance showing, . . . plaintiffs in misrepresentation cases must allege that they actually read the challenged representations" (quotation omitted)).

Plaintiffs must also plead actual reliance in connection with their common law fraud and negligent misrepresentation causes of action (Counts II and III), *Small v. Fritz Cos., Inc.*, 30 Cal. 4th 167, 174 (2003), as well as their cursory omission-based claims. AC ¶¶ 143, 165; *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009).

The AC utterly fails to make the required showing of reliance. First, nowhere do Plaintiffs affirmatively allege either that they or anyone else ever read or saw the

alleged misrepresentations on IDEXX's website, or any other unspecified advertisements or statements from IDEXX. Nor do they allege that anyone ever told them what the IDEXX website or unspecified ads supposedly said. This is fatal to these claims. *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363–64 (2010) (where complaint failed to allege that the plaintiff either relied on website's representations—or visited website at all—fraud allegations dismissed for lack of reliance).

Apparently recognizing that reliance is an essential element of their claim that they cannot prove, Plaintiffs propose a novel theory: "a misrepresentation made to a vet is passed on to an end user [e.g., Plaintiffs] *via the recommendation of the vet for the end user to purchase a diagnostic or test.*" AC ¶ 21 (emphasis added). This theory suffers from at least two critical flaws. First, the AC does not identify a single advertisement, statement, or website that Plaintiffs' veterinarian read. Plaintiffs' notion that they can allege reliance without alleging that *anyone* ever saw or heard the supposed misrepresentations at issue flatly contradicts California law. Second, this theory fails to reflect Plaintiffs' admission that their veterinarian, ATSC, not any individual Plaintiff, was responsible for selecting and purchasing veterinary tests from IDEXX. *See, e.g., id.* ¶ 32. Because Plaintiffs fail to allege facts showing that they or anyone else actually relied on so-called misrepresentations or omissions from IDEXX, their fraud claims fail as a matter of law and should be dismissed with prejudice.

2. Plaintiffs' Fraud-Based Claims (Counts II to V) Also Fail Because the Language Identified in the Amended Complaint Is Non-Actionable as a Matter of Law

Aside from the fraud-based claims' other deficiencies, the generalized, nonspecific language on which Plaintiffs base their flawed misrepresentation claims is simply nonactionable. In *Patt v. Antech Diagnostics, Inc.*, No. 8:18-cv-01689-JLS-DFM, 2019 WL 6654078, at *2 (C.D. Cal. July 30, 2019) (*Patt I*), a case closely resembling this one, Judge Staton aptly summarized the controlling authority

on this issue:"[T]o be actionable as an affirmative misrepresentation, a statement must make a 'specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact.'" *Id.* at *6 (citation omitted). "[P]roduct superiority claims that are vague or highly subjective" typically do not meet this standard. *Id.* (citation omitted). Whether such claims are sufficient "is a question of law appropriate for decision on a motion to dismiss." *Id.*

The *Patt* plaintiffs, a veterinarian and her practice, alleged that a national testing laboratory incorrectly reported the results of veterinary blood tests. The plaintiffs claimed that the lab "represent[ed] that its . . . results are of high quality and can be trusted" and that the plaintiffs relied on the defendant's representations to decide to enter a laboratory contract with the defendant. *Id.* at *1. The plaintiffs claimed that the defendant's test results were inaccurate, and that had the plaintiffs known it, they never would have executed a contract with the defendant. *Id.* at *1–2.

Like Plaintiffs in the instant case, the plaintiffs in *Patt* sued under the UCL, alleging, among other things, fraudulent business practices. And like Plaintiffs here, the plaintiffs sued on behalf of a putative class.

Judge Staton rejected the complaint's fraud-based claims, explaining that "a virtual consensus [exists] in the Ninth Circuit that generalized claims of dependability, reliability, or accuracy" are "nonactionable." *Id.* at *6 (citing Ninth Circuit courts holding that "accurate and reliable," "reliability," "designed and manufactured for years of dependable operation," and "ultra-reliable" are not actionable). Judge Staton specifically found nonactionable the "[d]efendant's representations that it provides 'accurate, dependable diagnostic testing' and implements protocols designed to 'ensure accurate results.'" *Id.*

That reasoning applies equally here. The AC accuses IDEXX of using essentially the same language on its website that *Patt I* already found nonactionable, i.e., IDEXX products and services "simplify the flow of information," "create

-13-

clarity," provide resources for "effective clinical decision-making," and are "effective," "accurate," "reliable," and "definitive."  AC ¶¶ 5, 140, 179.  These statements constitute hornbook generalized claims that are nonactionable as a matter of law.  S*ee also Cytyc Corp. v. Neuromedical Sys. Inc.*, 12 F. Supp. 2d 296, 300–01 (S.D.N.Y. 1998) (lab machine's claim of "unprecedented clarity" is nonactionable); *IBEW Loc. 595 Pension & Money Purchase Pension Plans v. ADT Corp.*, 660 F. App'x 850, 857 (11th Cir. 2016) (descriptors like "effective" are nonactionable).

*Patt* also addressed an omission claim similar to Plaintiffs'.  While the plaintiffs in *Patt* claimed that the defendant lab did not disclose "the high level of incorrect lab results that it generates," Judge Staton noted that the plaintiffs had failed to allege the materiality of the omission because they failed "to support their claims that the occurrence of inaccurate lab results are 'significant' and at a 'high level' such that a reasonable consumer would be misled by nondisclosure."  *Patt I*, 2019 WL 6654078, at *7.  It was not enough for the plaintiffs to make the conclusory assertion that they would not have used the defendant's services if they had known of a "*de minimis* number of inaccuracies" in the defendant's testing.  *Id.*  Since the complaint "provid[ed] no indication of the error quantity or rate that Plaintiffs allege to be materially significant," the complaint failed to state a claim for a material omission under the UCL.  *Id.*

The same is true here.  Plaintiffs suggest that no class plaintiff or veterinarian would use VetConnect Plus if they had known of the "matching issue."  AC ¶¶ 21, 161.  Since no reasonable consumer would expect testing software or a laboratory to produce 100% accurate results 100% of the time, Plaintiffs must mean the "matching issue" occurred in some unacceptably significant amount of test reporting that seriously impaired the central functionality of IDEXX's testing.  *See In re Apple Processor Litig.*, No. 18-CV-00147-EJD, 2022 WL 2064975, at *8 (N.D. Cal. June 8, 2022), *aff'd*, 2023 WL 5950622 (9th Cir. Sept. 13, 2023).  Plaintiffs, however, fail to allege the issue's materiality because they never allege a standard of care, an

-14-

unacceptable rate of error, or the rate of the matching issue's occurrence.  Nor do they allege that VetConnect Plus was the sole means of obtaining test results from IDEXX.  Absent such allegations, Plaintiffs' omission claims, like their affirmative misrepresentation claims, again fail as a matter of law.  *Patt I*, 2019 WL 6654078, at *7.

### 3.   Counts II to V of the Amended Complaint Lack the Particularity Required by Federal Rule 9(b)

Counts II to V of the AC also warrant dismissal because they fail to "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  This means alleging "the who, what, when, where, and how of the misconduct charged." *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (quotation omitted).  "[B]road allegations" that include "no particularized supporting detail" do not suffice.  *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001).

The Ninth Circuit has squarely held that Rule 9(b) is applicable to claims like those in Counts II through V whose gravamen is fraud.  Where the plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of that claim . . . [,] the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading [of that claim] as a whole must satisfy the particularity requirement of Rule 9(b)."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citation omitted).  As noted above, Counts II through V all allege the same fraudulent misrepresentations.  AC ¶¶ 123, 125, 130–37, 140–41, 151, 161, 171.

Although the AC cites various statements culled from IDEXX's website, *id.* ¶¶ 3–4, 140, 179, it never states how and when any Plaintiff (or anyone else for that matter) actually heard or saw them. The AC necessarily fails to explain how Plaintiffs could have relied on IDEXX's representations, since, as discussed previously, Plaintiffs essentially concede that they did *not* rely.

-15-

1        Moreover, in several instances, Plaintiffs fail even to articulate why the

2  statements are false in the first instance.  With regard to the alleged

3  misrepresentations in Paragraph 4, Plaintiffs copied these supposed false statements

4  from a section of the IDEXX website about IDEXX's RealPCR testing, not

5  VetConnect Plus.  The AC contains no allegation that IDEXX's PCR testing is

6  inaccurate, and Plaintiffs never allege what is supposedly false about the statements

7  quoted in Paragraph 4.  *RBC Bearings Inc. v. Caliber Aero, LLC*, No. SA CV 12-

8  1442 FMO (PLAx), 2013 WL 12129619, at *4 (C.D. Cal. Apr. 3, 2013) ("a plaintiff

9  must plead facts explaining why the statement was false when it was made"

10  (quotation omitted)).  Likewise, Plaintiffs never explain how the statements listed in

11  Paragraphs 3 and 7 are supposedly false (or who allegedly relied on them, or when,

12  or where).

13        As discussed above, the AC also alleges that IDEXX's website says its

14  products and services "simplify the flow of information," "create clarity," provide

15  resources for "effective clinical decision-making," and are "effective," "accurate,"

16  "reliable," and "definitive."  AC ¶¶ 5, 140, 179.  But the AC never alleges who read

17  these words, when or where they read them, or who exactly relied on them, causing

18  the allegations to fail under Rule 9(b).  *Kearns*, 567 F.3d at 1126.

19        In addition, the AC falls short of alleging a cognizable omissions theory.  To

20  survive a Rule 9(b) challenge, the AC would have to include "the content of the

21  omission and where the omitted information should or could have been revealed, as

22  well as provide representative samples of advertisements, offers, or other

23  representations that plaintiff relied on to make her purchase and that failed to

24  include the allegedly omitted information."  *Eisen v. Porsche Cars N. Am., Inc.*, No.

25  CV 11-9405 CAS (FEMx), 2012 WL 841019, at *3 (C.D. Cal. Feb. 22, 2012)

26  (quotation omitted).  The AC contains no such allegations.

27

28

4.   The Negligence Claim (Count I) Fails Under the Economic Loss Rule and Because It Is an Untenable Negligent Misrepresentation Claim

As discussed in section III.A *supra*, Plaintiffs' negligence cause of action fails as a matter of law under Rule 8 because Plaintiffs fail to allege specific facts demonstrating either negligence or harm to Plaintiffs caused by alleged negligence. In addition, Plaintiffs' negligence claims also fail for the following two separate and independent reasons.

(a)   The Economic Loss Rule Bars the Negligence Claim

Count I fails because the AC alleges only economic loss, not loss of property or physical injury to plaintiffs.  The economic loss rule provides that "there is no recovery in tort for negligently inflicted 'purely economic losses,' meaning financial harm unaccompanied by physical or property damage."  *Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 922 (2022) (quoting *S. Cal. Gas Leak Cases*, 7 Cal. 5th 391, 400 (2019)).

Even if Plaintiffs' allegedly injured animals might conceivably constitute "property" for these purposes, the AC neither alleges that Plaintiffs owned any of the animals nor pleads facts that would support that conclusion.  Under California law, rescued animals valued at over $100 remain the property of their original owner (if any) unless and until the finder brings the animal to the police or sheriff and 90 days pass without the owner reclaiming the animal.  13 Witkin, *Summary of Cal. Law, Personal Property* § 129 (11th ed. 2023); Cal. Civ. Code §§ 2080.1, 2080.3.[7] Because the AC does not allege that Plaintiffs owned the animals at issue, the negligence claim fails even aside from the Rule 8 deficiencies shown above.

---

[7] While different rules apply for property valued under $100, Plaintiffs do not allege facts suggesting those rules apply.  *Cf.* AC ¶¶ 31, 72.

(b)    Count I Fails Under the Law of Negligent Misrepresentation

Because the allegations of Count I "focus[] on defendants' representations and plaintiff's reliance on them," it is subject to all the requirements for asserting a claim of negligent misrepresentation. *Friedman v. Merck & Co.*, 107 Cal. App. 4th 454, 475 (2003). But, in the absence of physical harm, such a claim by a third party may proceed only where the person allegedly making the representation intends it to be "for the benefit of one or more third parties in a specific transaction or type of transaction identified to" the person making the representation. *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 392 (1992) (citing Restatement (Second) of Torts § 552 (Am. L. Inst. 1977)). That situation does not exist here.

In the leading case, the California Supreme Court rejected a negligent misrepresentation claim brought against a company's auditors by investors in the company because the investors were not the intended beneficiaries of the representations. *Id.* at 398, 413. Instead, "the person or 'class of persons entitled to rely upon the representations is restricted to those to whom or for whom the misrepresentations were made. Even though the defendant should have anticipated that the misinformation might reach others, he is not liable to them.'" *Id.* at 408 (quoting 5 Witkin, *Summary of Cal. Law, Torts* § 721 (9th ed. 1988)).

Count I fails for this additional reason. At best, the AC alleges representations to ATSC, not to Plaintiffs. Indeed, as noted in section II.B above, ATSC is the only veterinarian and customer of IDEXX mentioned in the AC.

Nor could this deficiency be overcome by a legitimate amendment. Only veterinarians may diagnose animals, Cal. Bus. & Prof. Code §§ 4825, 4826(b), and test results are just one piece of the puzzle. As IDEXX's terms of service expressly tell veterinarians, "[a]ny reference laboratory results displayed through the VetConnect Plus Service . . . will be in a simplified report format and a full test report will continue to be available to you for all analyses received by IDEXX."

Bilow Decl. Ex. 1 at 84; *see* RJN.  In other words, every veterinarian should know that they should not blindly accept any suggested match for a particular test result— let alone make a diagnosis solely on the basis of that result.  *See Willemsen v. Mitrosilis*, 230 Cal. App. 4th 622, 632 (2014) (property buyer did not justifiably rely on appraisal that was expressly conducted for lender's use).

## IV. THE AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

The Court should dismiss the AC with prejudice.  IDEXX previously filed a motion to dismiss Plaintiffs' original complaint.  Dkt. 22.  That motion described in detail the complaint's significant deficiencies under Rule 8, Rule 9(b), and governing law.  After reviewing the original motion, Plaintiffs filed an amended complaint in lieu of an opposition brief.  Dkt. 27.  Plaintiffs, however, merely added inconsequential facts and legal boilerplate, and then filed largely the same complaint again on March 22, 2024.

Under these circumstances, the Court should deny leave to amend.  *See Patt v. Antech Diagnostics, Inc.*, No. 8:18-cv-01689-JLS-DFM, 2020 WL 5076970, at *12 (C.D. Cal. May 18, 2020) (*Patt II*) (where deficiencies in the plaintiffs' amended complaint were "substantially the same deficiencies" as caused the court to dismiss the plaintiffs' original complaint, dismissal with prejudice warranted); *Williams*, 449 F. Supp. 3d at 902 ("district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint" (quotation omitted)).  Despite IDEXX's first motion calling the complaint's fatal deficiencies to Plaintiffs' attention, they have filed essentially the same claims with the same defects.  Because Plaintiffs have demonstrated that they cannot cure the original complaint's critical shortcomings, the AC should be dismissed with prejudice.

## V.    ALTERNATIVELY, THE CLASS ACTION ALLEGATIONS SHOULD BE DISMISSED

In the event the Court does not dismiss the AC in its entirety, it should dismiss the class action allegations because the claims are not appropriate under any of the three subsections of Rule 23(b) invoked in the AC.

In order to maintain a class action, "parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Plaintiffs cite Rule 23(b)(1) and Rule 23(b)(2) (but not Rule 23(b)(3)) as the bases for pursuing a class action here. AC ¶ 98. Neither cited provision applies.

Rule 23(b)(1)(A) is inapplicable because it applies only where there is a risk of "inconsistent or varying adjudications" "that would establish incompatible standards of conduct for" the defendant if the claims proceeded in separate actions. Fed. R. Civ. P. 23(b)(1)(A). This rule typically involves "'cases where the party is obliged by law to treat the members of the class alike (a utility acting toward customers; a government imposing a tax), or where the party must treat all [class members] alike as a matter of practical necessity (a riparian owner using water as against downriver owners).'" *Amchem Prods.*, 521 U.S. at 614 (citation omitted). "Certification under Rule 23(b)(1)(A) is . . . not appropriate in an action for damages." *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1193 (9th Cir. 2001). That is because a plaintiff's "success" in an action for money damages "does not fix the rights and duties owed by the defendants to others" who are not parties. *La Mar v. H&B Novelty & Loan Co.*, 489 F.2d 461, 466 (9th Cir. 1973). (As for injunctive relief claims, Plaintiffs lack standing to pursue such relief, as explained below.)

Rule 23(b)(1)(B) is inapplicable because it applies only where there is a risk that separate actions would result in judgments that "as a practical matter, would be dispositive" of other potential plaintiffs' claims, or "would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B). The

1   prototypical example involves "'limited fund' cases, instances in which numerous

2   persons make claims against a fund insufficient to satisfy all claims." *Amchem*

3   *Prods.*, 521 U.S. at 614 (citation omitted).  Other "[c]lassic examples" include "suits

4   brought to reorganize fraternal-benefit societies; actions by shareholders to declare a

5   dividend or otherwise to 'fix [their] rights'; and actions charging 'a breach of trust

6   by an indenture trustee or other fiduciary similarly affecting the members of a large

7   class' of beneficiaries, requiring an accounting or similar procedure 'to restore the

8   subject of the trust.'"  *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833–34 (1999)

9   (citations omitted).  This case is nothing like those.

10           Rule 23(b)(2) is inapplicable because Plaintiffs lack standing to pursue

11   injunctive relief.  To maintain a Rule 23(b)(2) class, Plaintiffs "must have standing

12   to seek the declaratory and/or injunctive relief sought on behalf of the class."

13   *Guzman v. Polaris, Indus.*, 345 F.R.D. 174, 187 (C.D. Cal. 2023) (quotation

14   omitted).  This requires Plaintiffs to allege an "'actual and imminent, not conjectural

15   or hypothetical' threat of future harm." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d

16   956, 969 (9th Cir. 2018) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493

17   (2009)).  Plaintiffs have not adequately alleged standing to seek injunctive relief

18   because they do not allege any threat of future harm from IDEXX.  They do not

19   claim any intention to purchase IDEXX's services in the future at all.  "Without any

20   stated desire to purchase" IDEXX's services "in the future," Plaintiffs "do not have

21   standing to pursue injunctive relief."  *In re Coca-Cola Prods. Mktg. & Sales Pracs.*

22   *Litig.*, No. 20-15742, 2021 WL 3878654, at *2 (9th Cir. Aug. 31, 2021).  In

23   *Guzman*, this Court held that a plaintiff who did not allege a desire to purchase an

24   allegedly defective product in the future lacked standing to seek injunctive relief and

25   could not maintain a Rule 23(b)(2) class.  345 F.R.D. at 188.  Here, as in *Guzman*,

26   Plaintiffs have "not met the requirements to proceed as a class under Rule 23(b)(2)."

27   *Id.*

28

Accordingly, if any claims survive this Motion to Dismiss, the class allegations (paragraphs 98 to 106) should be dismissed because Plaintiffs cannot pursue a class action as a matter of law.

## VI.    CONCLUSION

Because all claims in the AC fail as a matter of law the Court should dismiss the Amended Complaint with prejudice.

DATED: April 19, 2024              MUNGER, TOLLES & OLSON LLP


                                   By:    ___/s/ Jonathan E. Altman___
                                          Jonathan E. Altman
                                          Attorneys for Defendant IDEXX
                                          Laboratories, Inc.

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for IDEXX Laboratories, Inc., certifies that this brief contains 6,724 words, which complies with the word limit of L.R. 11-6.1.

DATED: April 19, 2024                MUNGER, TOLLES & OLSON LLP


                                By:    /s/ Jonathan E. Altman
                                       Jonathan E. Altman
                                       Attorneys for Defendant IDEXX
                                       Laboratories, Inc.